PERCIVAL WILDS, as Trustee in Bankruptcy of MID-
    TOWN CONTRACTING COMPANY, Appellant, *v.* THE
    BOARD OF EDUCATION OF THE CITY OF NEW YORK,
    Respondent.

Building contract — bankruptcy — provision that if con-
tractor abandoned work before completion, building material
on property could be used by owner in completion of work
and as part payment of contractor's obligation — when upon
contractor's failure to complete work, owner took possession
of materials, a trustee in bankruptcy for contractors thereafter
appointed cannot recover value of such materials.

A contractor undertook to erect a building for defendant and
stipulated that if for any reason he could not perform, and gave up
the work, the building material on the property could be used by

the owner in carrying out the contract. The contractor entered on the work but, having failed to perform, and abandoned it, the defendant took possession of such material as it found on the work for the purpose of using it in its completion, the cost of which was in excess of the value of the property so taken. Thereafter a petition in involuntary bankruptcy was filed against the contractor, and plaintiff elected trustee in bankruptcy. This action was brought by him to recover the property. *Held,* that the possession taken by the defendant was within the terms of its contract and did not constitute a conversion. Hence, plaintiff cannot recover. (*Titusville Iron Co.* v. *City of New York,* 207 N. Y. 203; *Zartman* v. *First National Bank of Waterloo,* 189 N. Y. 267; *Stephens* v. *Perrine,* 143 N. Y. 476, distinguished.)

*Wilds* v. *Board of Education,* 186 App. Div. 472, affirmed.

(Argued October 22, 1919; decided November 18, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 26, 1919, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Irving L. Ernst* for appellant. The attempted lien or title conferred by the bankrupt on the defendant is invalid because the bankrupt could not pledge subsequently acquired property as against its creditors. (*Titusville Iron Co.* v. *City of New York,* 207 N. Y. 203; *Rochester Distilling Co.* v. *Rasey,* 142 N. Y. 570; *Zartman* v. *National Bank of Waterloo,* 189 N. Y. 267; *Matter of Midtown Contracting Co.,* 238 Fed. Rep. 871; *Stephens* v. *Perrine,* 143 N. Y. 476.)

*William P. Burr,* Corporation Counsel (*John F. O'Brien* and *Joseph L. Pascal* of counsel), for respondent. Under its contract with the Midtown Contracting Company, upon the abandonment of the work by that concern, the board of education acquired a good title to the building materials on the line of the work and had the right to

use the same and the plant and equipment in the completion of the building. This title had vested in the board of education prior to the institution of bankruptcy proceedings against the contractor. (*Sexton* v. *Kessler,* 225 U. S. 90; *Matter of Shelby,* 235 Fed. Rep. 311; 242 Fed. Rep. 251; *N. F. H. P. & Mfg. Co.* v. *Schermerhorn,* 132 App. Div. 442; *Perkins* v. *Batterson,* 66 Hun, 583; *Tinker & Scott* v. *U. S. Fidelity & Guaranty Co.,* 169 Fed. Rep. 211; *Hurley* v. *A., T. & S. F. Ry. Co.,* 213 U. S. 126.) Assuming, for the sake of argument, that clause (Q) of the contract is in the nature of a chattel mortgage on subsequently acquired property, the board of education, having taken possession of the building materials and equipment before the petition in bankruptcy was filed against the contractor, under a provision of a valid contract, giving the board the right to use the same in the completion of the building, acquired a good title to said property, even as against the trustee in bankruptcy of the contractor. (*Chapman* v. *Weimer,* 4 Ohio St. 481; *Moody* v. *Wright,* 13 Metc. 17; *Mitchell* v. *Winslow,* 2 Story, 630; *Tennis* v. *Midkiff,* 55 Ill. App. 642; *Chase* v. *Denny,* 130 Mass. 566; *Leech* v. *Arkansas City Mfg. Co.,* 8 Kan. App. 621; *McLoud* v. *Wakefield,* 70 Vt. 558; *Peabody* v. *Landon,* 61 Vt. 318; *Thompson* v. *Fairbanks,* 196 U. S. 516; Jones on Chattel Mortgages, § 178; *Martin* v. *Holloway,* 16 Ida. 513; 25 L. R. A., N. S., 110; *Cameron* v. *Marvin,* 26 Kan. 612; *Dobyns* v. *Meyer,* 95 Mo. 132; 6 Am. St. Rep. 32; *Koppelman Furniture Co.* v. *Fricke,* 39 Mo. App. 146; *Blakeslee* v. *Rossman,* 43 Wis. 116.)

CRANE, J. The Midtown Contracting Company on October 13th, 1914, entered into a contract with the board of education of the city of New York for the construction of the Evander Childs High School in the borough of The Bronx. The price was $414,141. The contract contained the following provision:

" (Q) If the work to be done under this contract shall be abandoned by the Contractor, or if this contract shall be assigned, or the work sublet by him, otherwise than as herein specified, or if the Contractor shall at any time refuse or neglect to supply a sufficiency of workmen and materials of the proper skill and quality, or shall fail in any respect to prosecute the work required by this contract with promptness and diligence, or shall omit to fulfill any provisions herein contained, or if at any time the Superintendent of School Buildings shall be of the opinion, and shall so certify in writing to the Committee on Buildings, that the performance of the contract is unnecessarily or unreasonably delayed, or that the Contractor is wilfully violating any of the conditions or covenants of this contract or specifications, or is executing the same in bad faith or not in accordance with the terms thereof, or if the work be not fully completed within the time named in the contract for its completion, the Committee on Buildings shall notify the Contractor to discontinue all work, or any part thereof, under this contract, by a written notice, signed on behalf of said Committee by its Chairman or Acting Chairman, to be served upon the Contractor, whether personally or by leaving said notice at his place of residence or business, or with his agent in charge of the work, or with any employee found on the work, or by notice, letter or other communication addressed to the Contractor deposited in a postpaid wrapper in any postoffice box regularly maintained by the postoffice, and thereupon the Contractor shall discontinue the work or such part thereof, and the Board of Education shall thereupon have the power to contract for the completion of the contract in the manner prescribed by law, or to place such and so many persons as it may deem advisable, by contract or otherwise, to work at and complete the work herein described, or such part thereof, and to use such materials as he may find upon the line of the work

and to procure other material for the completion, so as to fully execute the same in every respect, and the cost and expense thereof at the reasonable market rates shall be a charge against the Contractor, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of the amount to be paid under this contract; and the Contractor shall have no claim or demand to such unpaid balance, or by reason of the non-payment thereof to him, and shall forfeit all claim to any moneys retained; and no molds, models, centers, scaffolding, planks, horses, derricks, tackle, implements, power plants or building material of any kind belonging to or used by the Contractor shall be removed as long as the same may be wanted for the work. In case the Contractor shall at any time in the opinion of the Superintendent, neglect to faithfully carry on and perform any portion of the work required by this contract, whereby safety and proper construction may be endangered or which may not be subsequently rectified, or whereby damage and inquiry may result to life and property, or either; then, and in every such case, the Superintendent shall have the right forthwith and without notice to the Contractor to enter into and upon the work, and to make good any and all imperfect work and material and deficiencies arising by reason of such neglect; the expense and cost thereof shall be a charge against the Contractor, to be deducted from any payment or moneys which may be due or subsequently become due under this contract, and the opinion and decision of the Superintendent of School Buildings in all instances which may arise in the manner aforesaid shall be final, conclusive and binding upon the Contractor. But no action so taken by the Superintendent of School Buildings shall release the Contractor from any and all consequences and damages which may have arisen, or may arise, owing to such neglect, whether willful or by omission; and the Contractor covenants and agrees to hold

the party of the first part harmless against and from any and all suits at law and all and every damages and loss whatsoever arising therefrom. Should the Contractor fail to complete the contract he shall forfeit all claim for compensation."

The company commenced work but failed to perform its contract and in the month of July, 1916, abandoned the work. On August 11th, 1916, the defendant took possession of such building materials, plan and equipment belonging to the Midtown Contracting Company as it found on the line of work for the purpose of using the same in the completion of the work and as provided in said clause " Q." The excess cost to the defendant to complete the work in accordance with the provisions of the contract referred to was $60,330.39, no part of which has been paid to the defendant.

Four days after the defendant took possession of the materials as stated and on August 15th, 1916, a petition for the involuntary bankruptcy of the Midtown Contracting Company was duly filed in the office of the clerk in the United States District Court for the Southern District of New York, and thereafter the plaintiff was elected trustee in bankruptcy of the said company and duly qualified.

This action has been brought to recover the property taken by the defendant which by stipulation is valued at $7,000.

The sole question presented for review is whether the clause " Q " of the contract and the possession by the defendant four days before the bankruptcy proceedings gives to the defendant title to the property as against the trustee in bankruptcy.

The contract appears to be an arrangement whereby a contractor undertook to erect a building and stipulated that if for any reason he could not perform and gave up the work that the building material upon the property could be used by the owner in carrying out the contract

and as part payment in the reduction of the contractor's obligation. He agreed to do the work and furnish the material and would be liable in case of failure for the excess cost of completion. In this case the excess cost was over $60,000. The use of the material upon the line of work by the owner was a reduction of the liability and lessened the excess cost. I do not see why such a contract has been referred to as one creating a lien upon future property or a contract in the nature of a chattel mortgage upon subsequently acquired property. It is rather an agreement for part payment and when possession is taken and the application made it is a payment and not a lien or an attempt to create a lien. The question of preference among creditors under the Bankruptcy Law does not enter into this case. This was the understanding of such a contract in *Duplan Silk Company* v. *Spencer* (115 Fed. Rep. 689) and in *Matter of Shelly* (235 Fed. Rep. 311).

Do the authorities force us to any other conclusion regarding the nature of this contract? The judges below have differed regarding the effect of the *Titusville* case (*Titusville Iron Co.* v. *City of New York*, 207 N. Y. 203).

The contract there is the same as here except that it was for the furnishing and installing of a heating and ventilating apparatus in a public school. The all important difference between the two cases is, however, the time of possession. In the *Titusville* case the bankruptcy proceedings were commenced on the 18th of June and possession by the board of education taken thereafter and on the 27th day of June. It was held that the clause of the contract which was the same as that above quoted in this case did not and could not create a lien upon future acquired property, and that the trustee in bankruptcy having been appointed before possession under that clause was taken by the city of New York, the rights of creditors had intervened and the city acquired no title. It will be noticed that the nature of

this contract was not discussed. The opinion does not say that it was in the nature of a chattel mortgage or was an attempt to create a lien. It simply holds that such a contract could not operate as a chattel mortgage or as a lien upon property thereafter acquired so as to give property rights. The case does not hold that if possession had been taken under the contract and in accordance with its terms before bankruptcy proceedings had been commenced that such possession would not have been an application of the property to the obligations of the contractor. The endeavor in that case was to establish the city's rights to the property irrespective of possession and by reason of the agreement.

In the present case we have possession taken before bankruptcy proceedings and a use of the property to reduce the contractor's liability. It is not a lien but an application in the nature of a payment. In the *Titusville* case Chief Judge CULLEN in writing said: " The title of the contractor passed to the receiver in bankruptcy before the forfeiture authorized by the contract had accrued or the defendant taken possession," etc. (p. 210.) This clearly intimated that possession prior to the bankruptcy proceedings would or might have changed the result. As I read the *Titusville* case it does not pass upon the nature of the contract nor hold that possession taken before bankruptcy proceedings may not be considered as an application of the property to reduce the liability of the contractor.

Where would the limit be placed upon action by a trustee if possession under a contract like this can create no right as against *subsequent* proceedings in bankruptcy? In this case the proceeding was only four days after the board of education had taken possession of the property. Suppose it had been a year after all the material had been used in the public school and the $60,000 excess charge created against the contractor. Would an action for conversion then lie by the trustee against the board

for the use of the property? The question, I think, forcibly suggests that the *Titusville* case does not go to the extent of holding that possession prior to bankruptcy proceedings is an immaterial fact.

We must read the *Titusville* case in the light of the facts presented to the court at that time.

If, therefore, this contract may be any other than an agreement in the nature of a chattel mortgage or lien upon after-acquired property the *Titusville* case, *Zartman* v. *First National Bank of Waterloo* (189 N. Y. 267) and *Stephens* v. *Perrine* (143 N. Y. 476) are not applicable.

*Matter of P. J. Sullivan Co.* (254 Fed. Rep. 660), to which we have been referred, was decided upon facts essentially different from those in this case.

For the reasons stated the judgment appealed from should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, COLLIN, HOGAN, CARDOZO and ANDREWS, JJ., concur.

Judgment affirmed.