**In re C. M. McLEAN & SONS, Inc.**

**McCLINTIC–MARSHALL CORPORATION v. MANGAN.**

**No. 302.**

Circuit Court of Appeals, Second Circuit.

April 16, 1934.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Frederick H. Wood and Joseph Day Lee, both of New York City, of counsel), for appellant.

Herbert H. Ray, of Binghamton (Hinman, Howard & Kattell, of Binghamton, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

C. M. McLean & Sons, Inc., made a contract with the state of New York on June 12, 1931, to furnish materials and erect an armory at Kingston in that state for an agreed price to be paid to the contractor at times and on conditions as stated in the agreement. Two paragraphs of the contract follow:

"102. If the Contractor shall abandon the work under his contract, or fail or refuse to conform with the requirements of the contract, either in workmanship or material, or if at any time the Chief Engineer shall be of the opinion that the Contractor is wilfully violating any of the conditions of the contract, or executing the same in bad faith, or that the Contractor has failed to furnish an adequate plant or to supply a sufficient number of workmen to prosecute the work diligently, or that any part of the work is being unnecessarily delayed, or if the contract or any part thereof shall be assigned or sublet without the written consent of the Chief Engineer, and the Chief Engineer shall so certify to the State, the contract may be declared null and void, the security may be forfeited and the materials delivered at or built into the work, and the machinery, implements and tools of every description which may be found at the location of the work, shall become the property of the state.

"103. The State through the Chief Engineer, may thereupon call the surety to complete the contract as provided for in the bond, or the State may, at its option, proceed to complete the work, either by day work or contract, and any funds retained by the State and any sum realized from the material and equipment reverting to the State shall be applied to pay the increased cost of the work. If the contract is annulled under this article, the Contractor shall not be entitled to any damages on account thereof, nor shall such annullment affect the right of the state to recover against the Contractor or his surety damages which may arise, or extra costs which may be incurred by it as the result of the failure of the Contractor to carry out the terms of the contract."

McLean & Sons, Inc., purchased to use in the building structural steel of the appellant of the value of $29,400, which was shipped to it on credit, and the greater part of this steel was delivered at the location of the armory. Some of it was used in constructing the armory which was partially built when the state notified the contractor on November 30, 1931, of a claimed default in performance of the contract and gave it seven days' notice to im-

prove the progress of the work. The contractor replied to this notice on December 7, 1931, that it would not complete the contract, and waived the notice given. On December 9, 1931, the contract was duly declared void in behalf of the state in accordance with the provisions already quoted.

There was then 249 tons of fabricated steel at the building site which had not been used. The state advertised for bids for the completion of the work, and inserted therein the following:

"*Material on site.* No payment has been made by the state on the following material, delivered at the site but not incorporated in the work, and therefore bidders shall not assume the right to use this except by arrangement with the owners of the same."

The contract to complete the building was awarded to Lyman T. Schoonmaker for an amount some $90,000 less than the original contract price. Schoonmaker made a contract with the appellant to supply the necessary fabricated steel. It did so, and the 249 tons left by McLean & Sons, Inc., was part of the steel it supplied.

On February 8, 1932, McLean & Sons, Inc., was adjudicated a bankrupt, and on March 1, 1932, a trustee was elected. The trustee had some negotiations with the appellant in which he claimed in behalf of the bankrupt's estate to be entitled to pay for this steel, and the appellant acquiesced in this claim and paid the trustee $15,438 for it on April 4, 1932.

Thereafter the armory was completed. The state retained part of the contract price, and mechanics' liens have been filed by several parties, including the appellant, against the money so held by the state. Apparently that is not sufficient to pay all in full.

Some time in May, 1933, the appellant learned of the above-quoted provisions of the contract made by the state with McLean & Sons, Inc., and applied to the District Court for a summary order in the bankruptcy proceedings directing the trustee to return the amount received from the appellant for the steel. Appellant then took the position that the trustee had no title to the steel when it was sold to the appellant and consequently no right to retain what had been paid for it. The order was denied on several grounds, and an appeal was allowed by the District Judge.

The appellee insists that no controversy, as distinguished from a proceeding in bankruptcy, is presented and that the appeal

should be dismissed because not allowed in this court. That the disposition of funds in the hands of the trustee, and so in the custody of the court, involves merely a matter of administration furnishes a plausible ground for the position the appellee has taken. See Hutchinson v. Le Roy (C. C. A.) 113 F. 202; In re Antigo Screen Door Co. (C. C. A.) 123 F. 249. But this dispute, although the bankrupt was indebted to the appellant, does not relate to the claim of a creditor of the bankrupt. It is a dispute between the trustee, as the representative of all the creditors, against what is virtually a third party claiming the right to recover money paid to the trustee by mistake which has unjustly enriched the bankruptcy estate. The fact that the method used to bring the matter before the court was by application for a summary order, as to which the parties stipulated to save time, makes no difference. A summary proceeding to compel a third person to account for property held adversely to the right of a trustee in bankruptcy is appealable under section 24a of the act (11 USCA § 47 (a). In re Times Square Auto Supply Co. (C. C. A.) 47 F.(2d) 210. This is but the converse of such a proceeding, and for the same reason the appeal need not be allowed by the appellate court. Compare Taylor v. Voss, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889; White v. Barnard (C. C. A.) 29 F.(2d) 510.

■ Whether or not the trustee has received from the appellant money which does not belong to the bankruptcy estate, however, depends upon whether the title to the structural steel sold was in the trustee at the time of sale. There is no question but that the bankrupt had title to this steel when the state canceled the contract. The state had not paid for it, and section 92 of the contract provided that such material was to become the property of the state when paid for. So the claim now made by the appellant, though so far as we are aware the state has claimed no forfeiture, is that, under the provisions of section 102, above quoted, this steel was forfeited to the state when the contract was declared null and void. It is said that this provision will be enforced in equity despite the rule against forfeitures because the provision was not for a penalty, but to secure performance, and a taking by the state of materials furnished should be considered the acceptance of performance pro tanto. The inclusion of the equipment is explained on this theory as the affording of a means to the state for the performance of the work of erecting the building in the event of the contractor's default. Thus it is claimed that the state owned the steel as soon as the contract was declared void, not as a forfeiture, but because it had been furnished by the contractor in part performance of the contract. Apparently this is an attempt by construction to treat the provisions of this contract as of the same legal effect as those considered in Wilds v. Board of Education, 227 N. Y. 211, 125 N. E. 89, where materials furnished by the contractor were appropriated to the performance of the contract, in accordance with the agreement, four days before the bankruptcy of the contractor. It was there held that the trustee in bankruptcy did not take title. Even if this contract is to be so construed, there is one fact essential to the conclusion that title passed to the state, and that is an appropriation of this material by the state to the performance of the contract. Unless it became entitled to it by way of forfeiture regardless of any duty to account for it, there was no more than the right to choose whether to take the material, allow the contractor for it, and let the contract for completion on the basis of so much material on hand; or to let the contract for completion on the basis of a furnishing by the new contractor of all the material needed. The state did the latter, and, as it succeeded in getting the work done for less, it obviously was not relinquishing any valuable right in failing to take this steel and become liable to account for it. So there is no element of unauthorized abandonment of state property to be considered in view of the letting of the completion contract without giving the new contractor the right to use this material without arrangement with the owner. The intent to treat the material then as not property of the state is plain, and negatives the claim that title passed to the state by way of accepted partial performance of the contract. This leaves the only basis on which to deny the title of the trustee one of forfeiture.

■■ As the state has never attempted to take the steel by way of a forfeiture and it has now become a part of the building, the question of the enforcement in equity of a penalty is not presented. The nearest approach to that is whether the state could waive this provision. It is plain that it has waived it in so far as it could be waived. The provision for a forfeiture was not required by statute. It was merely a contractual right to the full extent that any right was created. Agents for the state had the power to make the contract without the forfeiture clause. It follows that they had the power to waive it when in their sound judgment that was for

the best interests of the state. Woods v. Board of Sup'rs, 136 N. Y. 403, 32 N. E. 1011; City of Buffalo v. Bettinger, 76 N. Y. 393. As the state at all times had remaining a balance of the original contract price more than sufficient to complete the armory, its agents did not act to its detriment in failing to assert what was at best a questionable right to a strict forfeiture. The trustee in bankruptcy, therefore, took title to the steel and transferred that title to the appellant, who has received what it paid for and has no just claim to the purchase price now held by the trustee.

For the reasons stated, the order of the District Court denying the appellant's petition should be affirmed, and the order denying a reargument and rehearing need not be considered.

Affirmed.