[No. 22837. Department One. April 14, 1931.]

WALTER R. BEETCHENOW et al., *Respondents*, v. CHAS. J. BARTHOLET, *as State Supervisor of Hydraulics*, *Appellant*.[1]

[1]Reported in 298 Pac. 335.

· *The Attorney General* and *John C. Hurspool, Assistant,* for appellant.

*W. H. Patterson,* for respondents.

MAIN, J.—This proceeding presents a controversy over the waters of a stream for irrigation purposes. The trial to the court without a jury resulted in findings of fact from which it was concluded that Walter R. Beetchenow and wife were entitled to the amount of water which they claimed. Judgment was rendered in accordance with the findings and conclusions. Subsequently, a motion to vacate the judgment was made and overruled. The state supervisor of hydraulics appeals from the judgment and from the order overruling the motion to vacate.

Johnson creek is a small stream in Okanogan county, flowing into the Okanogan river. Sometime early in the year 1926, a proceeding was had, in accordance with the provisions of the water code, to determine the parties who were entitled to water from Johnson creek, and the amount to which each was entitled. A referee was appointed by the superior court to take the testimony, and make his findings of fact and conclusions. To the findings and conclusions made by the referee, exceptions were filed, and the matter came on for hearing before the superior court. In the judgment entered, the exceptions were overruled, and the findings and conclusions made by the referee in his report were adopted and confirmed as the findings of fact and conclusions of law of the court, except as therein specifically modified.

In the decree, the lands entitled to the waters of Johnson creek were divided into a number of classes

ranging from one to eight. The respondents' land was placed in class three, their rights being subordinate to those in classes one and two. After making the classification, the judgment provided (par. VIII):

"That during the time when water is not used by the person on the land to which it is allotted, as provided herein, it shall be reverted to the stream and shall become subject to use by other appropriators in accordance with rights set out in the preceding schedule."

This judgment was rendered and entered by the clerk May 20, 1926. Shortly after the entering of the judgment, E. D. Clough and C. C. Woodward purchased the water rights of all those in classes one and two, and also practically all those in the classes below class three, and diverted the waters of the creek to lands which were in the Okanogan irrigation district, and which were not involved in the previous adjudication. In August or September, 1926, the respondents, claiming the right to use the waters of Johnson creek to the extent that it was awarded to them under class three in the decree, put in a weir to divert the same. Upon complaint being made by Woodward, one of the purchasers, the water master for the district removed the weir, and ordered the respondents to cease diverting the water.

From this action the respondents appealed to the superior court of Okanogan county, and October 9, 1926, a trial was had, at which evidence was offered by the respective parties. December 3, 1926, findings of fact, conclusions of law, and a judgment were signed by the court, and apparently handed to counsel to be presented to the clerk for filing and recording. The findings of fact, conclusions of law, and judgment were not filed in the office of the clerk of the superior court of Okanogan county until August 21, 1930. The judge before whom the case was heard died January 2, 1930,

prior to the filing with the clerk of the findings, conclusions and judgment.

It is first contended that the motion to vacate the judgment should have been granted, because the judgment was not filed prior to the death of the judge of the superior court before whom the cause was tried. Section 435, Rem. Comp. Stat., provides:

"All judgments shall be entered by the clerk, subject to the direction of the court, in the journal, and shall specify clearly the amount to be recovered, the relief granted, or other determination of the action."

It will be observed that by this statute all judgments are to be "entered" by the clerk. There is a difference between the "entering" of a judgment, and the "rendering" thereof. The entering is a ministerial act of the clerk; the rendering is the judicial act of the court. A judgment is rendered when it is signed by the court and by him passed to the clerk for filing, or handed to some other person to be presented to the clerk for that purpose. In 15 R. C. L., page 571, it is said:

"Although it has been said on high authority that a judgment is a solemn record, the entry or record of a judgment should not be confused with the judgment itself. The judgment is a judicial act of the court; the entry is the ministerial act of the clerk. The judgment is as final and complete when pronounced by the court as when it is entered and recorded by the clerk. Although such entry may be necessary to give full force to the judgment as affecting the rights of third parties, the entry or recording of a judgment is not essential as between the parties themselves. A judgment therefore is considered as having been rendered when the court has pronouncd a decree which finally determines the rights of the parties and nothing remains to be done but for the clerk to record the entry of the judgment. The judgment itself is not what may be entered, but is that which is considered and delivered by the court. Even if the judgment may be proven only by

the record, yet it derives its force, not from its entry on the record, but from its rendition by the court.''

The cases of *Quareles v. Seattle,* 26 Wash. 226, 66 Pac. 389, and *Barthrop v. Tucker,* 29 Wash. 666, 70 Pac. 120, are to the same effect.

In the case of *State ex rel. Brown v. Brown,* 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974, it was held that an order of the court, though signed and handed to the clerk for entry, could be recalled by the court; but that case does not decide the question here presented. A judgment being complete at the time it is signed and handed to the clerk for filing, or to counsel for that purpose, as is the common practice, and there being nothing further to be done so far as the judicial act is concerned, there is no reason why the ministerial act of filing and entering on the records cannot be performed after the death of the judge who signed the judgment. The motion to vacate the judgment was properly overruled.

The next question calls for an interpretation of paragraph eight of the judgment, above set out. As already noted, that paragraph in the judgment followed the enumeration of the different classes and the amount of water to which each was entitled. The language used in paragraph eight specifically provides that, during the time when water is not used by the person on the land to which it was allotted, as provided therein,

'' . . . it shall be reverted to the stream, and shall be subject to use by other appropriators, in accordance with the rights set out in the preceding schedule.''

Here is a plain provision that, if the water is not used by the person on the land to which it is allotted, it shall be returned to the stream, and shall be subject to use by other appropriators. If this decree is to be given effect, those owning water rights in classes one

and two had no right to sell and dispose of them, to be used upon other lands foreign to the stream, and thereby deprive the respondents of the water which they would receive under class three if the waters, when not used upon lands specified in classes one and two, were returned to the stream. No appeal was taken by any of the parties to that judgment, and consequently it is final and conclusive and binding upon them.

The cases of *Osborn v. Chase,* 119 Wash. 476, 205 Pac. 844, and *In re Alpowa Creek,* 129 Wash. 9, 224 Pac. 29, are not in point, because in the judgment in neither of those cases was there, as here, a provision to the effect that, if the water was not used by the particular class or classes to which it had been allotted, it should be reverted to the stream. This is not a case where, as stated in Rem. Comp. Stat., § 7391, the right may be transferred to another and become appurtenant to any other land or place of use, without loss of priority of right theretofore established, if such change can be made without detriment or injury to existing rights. Here, there was a detriment to respondents' existing rights which had been given to them in the judgment.

The next question is whether respondents' notice of appeal from the act of the water master contained any averment that they had suffered injury by reason of the change of the use of waters to other lands than those mentioned in the decree. Rem. Comp. Stat., § 7361, which is one of the sections of the water code, provides that any person feeling aggrieved at an order, decision or determination of any water master, may have the same reviewed by a proceeding for that purpose, in the nature of an appeal, initiated in the superior court of the county in which the matter affected, or a portion thereof, is situated, and that the proceedings in every such appeal shall be heard and tried by

the court, and full opportunity to present evidence shall be given before judgment is pronounced. Following this, and in the same section. it is provided:

"No such appeal shall be entertained unless notice of appeal containing a statement of the substance of the order, decision, or determination complained of and the manner in which the same injuriously affects the appellant's interests, shall have been served personally upon the state hydraulic engineer, or by registered mail, at his office at the state capital, within twenty days following the rendition of the order, decision or determination appealed from and communication thereof in writing to the person affected thereby."

It will be seen that the notice of appeal there provided for must set out the manner in which the interests of the party appealing are injuriously affected by the order, decision or determination appealed from. The notice of appeal in the present case in substance is much the same as would be found in an ordinary complaint presenting the same matter. The notice, when read in its entirety, it seems to us, shows with sufficient clearness the manner in which the respondents' rights or interests were injuriously affected.

No objection to the notice was made in the superior court when the matter came on for trial, and testimony was offered by the respective parties without any objection on the ground that the notice was insufficient, the testimony covering approximately ninety-two pages in the statement of facts. There does not appear to be any reason why the same rule should not be applied to this notice as is applied to the ordinary complaint, assuming that it was not sufficiently specific. We think the notice was sufficient, but if not, the question, not having been raised in the superior court, is not now available to the appellant.

There is a further contention that the evidence does not show that the rights or interests of the respondents

were, in fact, injuriously affected by the changing of the place of the use of the waters of Johnson creek. Without reviewing the evidence in detail, it may be said that it clearly shows that, if the respondents are deprived of the use of the water, their interests will be injuriously affected.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.

