**HUMPHREY et al. v. BANKERS MORTG. CO. OF TOPEKA, KAN., et al.**

**BANKERS MORTG. CO. OF TOPEKA, KAN., v. HUMPHREY et al.**

Nos. 1291, 1292.

Circuit Court of Appeals, Tenth Circuit.

Aug. 27, 1935.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

T. M. Lillard, of Topeka, Kan. (Tom D. McKeown, of Chicago, Ill., H. S. Roberts, of Kansas City, Kan., and N. J. Ward, of Belleville, Kan., on the brief), for appellants and reverse.

·James A. McClure, of Topeka, Kan. (J. L. Stryker, of Fredonia, Kan., and Robert Stone, Robert L. Webb, Beryl R. Johnson, and Ralph W. Oman, all of Topeka, Kan., on the brief), for appellees and reverse.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The separate appeals in these cases present conflicting orders entered by the District Court of Kansas sitting in bankruptcy.

The Bankers Mortgage Company is a corporation organized under the laws of Kansas with its domicile at Topeka. It is authorized to issue and sell so-called savings bonds and other obligations and to deal in mortgages and other securities. An action in equity for the appointment of a receiver was filed against it in the court below in 1933. The basis of the action was fraudulent conduct on the part of its officers. Frank L. Campbell, former clerk of the court, was appointed permanent receiver in July of that year and continued to conduct the business without interruption until the proceedings in bankruptcy which give rise to these appeals were instituted. The orders in the receivership proceedings were made and entered by Honorable Richard J. Hopkins, one of the judges of the court.

On October 22, 1934, Clyde C. Humphrey and four others filed in the court below a petition under sections 77A and 77B of the Bankruptcy Act (11 USCA §§ 206, 207). They alleged that they were creditors of the corporation having provable claims against it aggregating more than $1,000 in excess of the value of the securities held by them; that the corporation was insolvent and unable to meet its debts as they matured; that the petition was filed in good faith; and that the corporation should effect a reorganization. They set forth in addition the pendency of the receivership proceeding, the manner in which the receiver had conducted the business, and the resulting necessity for the reorganization. That proceeding was referred to Honorable John C. Pollock, the other judge of the court. All orders made in it were entered by him. A joint and several motion of the corporation and the receiver to dismiss the petition was submitted to the court on November 12, 1934, and an order overruling it was entered April 3, 1935. A motion to set the order aside was filed and denied. The corporation, the receiver, and two stockholders answered. Insolvency, inability of the debtor to meet its debts as they matured within the meaning of the statute, the good faith of the petition, and that petitioners had provable claims aggregating more than $1,-000 above their securities, were expressly denied. The issues thus raised were heard on May 6th. Evidence was submitted, and at the conclusion of the hearing the court said, among other things: "From this on, so long as it is handled in this court, the court will handle the whole thing and won't have anybody butting in. * * * Let me say, if when these plans are brought in, I am satisfied you convince me, it is for the best interests of the people who have things at stake here, I will approve it. If I am convinced it is not any good, I will liquidate it. * * * I think I will appoint Mr. Campbell to act on as receiver, and if some plan is presented here to dispose of this company better than running along under this receivership, I will appoint Mr. Campbell Trustee." Counsel were then given permission to file briefs. Petitioners were allowed ten days and the corporation, the receiver and the stockholders ten days thereafter for that purpose. Twelve days later, that is, on Saturday, May 18th, at between 10:30 and 11 o'clock in the forenoon, the court signed an order in chambers at Kansas City in which it was found that the debtor was unable to meet its debts as they matured; that the petition was filed in good faith and complied with the act of Congress; that petitioners and others desired to effect a plan of reorganization; and that on account of an emergent condition existing by reason of asserted adverse claims and litigation begun and threatened, immediate action was necessary to protect and preserve the estate. The petition was approved, jurisdiction was reserved for the

348

purpose of making all necessary subsequent orders, and the clerk was directed to give notice that a hearing would be held on the 21st to consider the matter of an appointment of a temporary trustee. The order was handed immediately to the secretary of the court, and soon afterwards—the time not being more definitely fixed—she mailed it to the clerk at Topeka, that being the seat of the court. The envelope was postmarked at Kansas City at 3 o'clock in the afternoon, and it was received by the clerk at 8:30 o'clock on Monday morning, the 20th. It was the prevailing custom of the clerk to mark orders signed by the court at other places than Topeka filed as of the date on which they were signed, and in accordance with that custom the order was marked filed on the 18th. The court, on the 20th and without a hearing, appointed Campbell as trustee with direction to take charge of the business and conduct it subject to further order. The trustee duly qualified immediately.

Pursuant to a resolution of its board of directors adopted earlier in the day, the corporation on Saturday, the 18th, at 12:15 o'clock in the afternoon, filed in the court below a voluntary petition in bankruptcy under the provisions of sections 77A and 77B. It was alleged therein that the corporation was not insolvent, but was unable to meet its debts as they matured; that it had been in receivership; that the creditors' petition previously referred to had been filed and was then pending; that various claims and suits had been filed in the United States court in Mississippi involving sums in excess of $30,000; that the full amount of such claims with interest and attorneys' fees was sought; that a hearing thereon had been set for the 25th of that month and that the court there had authorized others having similar claims to present them at that time; that the debtor believed many other similar claims would be filed, and that all of them would be allowed and judgments rendered thereon which would result in preferring those creditors over others. That petition was immediately presented to Judge Hopkins and all orders made in that case were entered by him. The court promptly entered an order approving the petition and appointing Campbell and Otis Allen as joint trustees. Campbell declined to accept the appointment, and a subsequent order was entered later that day appointing Allen sole trustee with direction that he take charge of the property. The court entered another order on Monday morning at about 7:30 o'clock directing Campbell to surrender the property to Allen. A like order was entered at the same time in the receivership case. Allen and an officer went immediately to the residence of Campbell; a copy of each order was served and delivery of the property demanded. After some parley Campbell declined to deliver; instead, he filed a formal response in which he set forth his appointment as trustee in the involuntary proceeding and that he held the property by virtue of it. Answer was made to the response, and the petitioning creditors in the involuntary proceeding interposed a motion to dismiss the voluntary proceeding on the ground that by the approval of the petition in the former case, the court acquired and exercised exclusive jurisdiction of the debtor and its property, and that in consequence the later filing of the petition in the voluntary proceeding was without effect and conferred no jurisdiction upon the court. The court heard the entire matter. Testimony was submitted and the record in the involuntary proceeding was introduced. The court then made extended findings and conclusions. It was found, among other things, that the petitioning creditors in the involuntary proceeding did not have claims against the corporation in excess of the securities held by them, and that the commencement of that action was not for the best interests of the creditors and stockholders. It was concluded that the court was without jurisdiction to enter the orders in that case approving the petition and appointing a trustee which would bind the corporation; that such orders were void; that those approving the voluntary petition and appointing Allen trustee were valid. The motion to dismiss was overruled, and Campbell was directed anew to surrender the property.

Appeals were allowed by the District Court. That in the first case here was from the respective orders made in the voluntary proceeding appointing Allen as trustee, directing Campbell to surrender the property, and overruling the motion to dismiss; that in the second case here was from the orders made in the involuntary proceeding denying the motion to set aside the order overruling the motion to dismiss the petition, approving the petition, and appointing Campbell as trustee.

The record proffers a preliminary question respecting the right of appeal from orders made in a proceeding of this kind. The parties do not present it, but it is jurisdictional and has engaged our attention. Section 77B of the Bankruptcy Act was added by the amendment of June 7, 1934 (section 1 [11 USCA § 207]), and its constitutional validity as a part of the law on the subject of bankruptcy is not open to doubt. Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U. S. 648, 55 S. Ct. 595, 79 L. Ed. 1110; Campbell v. Alleghany Corporation (C. C. A.) 75 F.(2d) 947; Grand Boulevard Inv. Co. v. Strauss (C. C. A. 8) 78 F.(2d) 180, decided July 15, 1935. That section contains no provision expressly authorizing an appeal except in one instance. It is provided in paragraph (c) (9), of the section that independently of others an appeal may be taken to the Circuit Court of Appeals from an order fixing an allowance. Otherwise the statute fails to authorize in express terms that an appeal may be taken from action had under its provisions. But it does provide:

" * * * If the petition or answer is so approved, an order of adjudication in bankruptcy shall not be entered and the court in which such order approving the petition or answer is entered shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section, and shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature." Paragraph (a).

"All other provisions of this title, except such as are inconsistent with the provisions of this section, shall apply to proceedings instituted under this section, whether or not an order to liquidate the estate has been entered. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors'; 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this section; the date of the order approving the petition or answer under this section shall be taken to be the date of adjudication, and such order shall have the same consequences and effect as an order of adjudication." Paragraph (k).

"In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved." Paragraph (o).

These provisions, and the many others contained in the section plainly intended to assimilate a proceeding under its terms to an ordinary bankruptcy proceeding, render sections 24a, 24b, 25a of the Bankruptcy Act, 11 USCA §§ 47 (a, b), 48 (a), authorizing appeals applicable. That, however, is not enough. Which section applies in perfecting an appeal from these several orders?

An order approving a petition effectually subjects the debtor to the jurisdiction of the court and places its property wherever situated in exclusive custodia legis from and after that time. In re Fox Metropolitan Playhouses (C. C. A.) 74 F. (2d) 722; In re 211 East Delaware Place Bldg. Corporation (C. C. A.) 76 F.(2d) 834. It has the same consequences with respect to subjecting the debtor and its property to the jurisdiction of the court for the purposes of administration in accordance with the terms of the statute that an adjudication has in an ordinary bankruptcy proceeding. That is apparent from a careful analysis of the various provisions of the section, and it is expressly so provided in the concluding language of paragraph (k). That paragraph further decrees that all other provisions of the title not inconsistent with those contained in the section shall apply to proceedings instituted under it whether or not an order to liquidate the estate has been entered. Paragraph (o), is in harmony. And paragraph (a), does not argue that they are dissimilar in effect. It suggests, on the contrary, that they are so closely akin in essence and consequence that approval of the petition suspends the power of adjudication while the proceeding continues to pend. Paragraph (o) is identical in substance with paragraph (n) of section 75 (11 US CA § 203 (n), except that in the latter jurisdiction attaches from the filing of the petition, while in the former it attaches upon the approval. The appeal in a quite recent case was taken from an order sus-

taining the petition of a creditor to dismiss the proceeding brought under section 75 because the debtor was not a farmer, but in passing the court expressed the view that the filing of the petition effected an implied adjudication which was the equivalent of an adjudication in bankruptcy. Wilkerson v. Cooch (C. C. A. 9) 78 F.(2d) 311. We think an order approving a petition under section 77B is so nearly the counterpart of an adjudication in an ordinary bankruptcy proceeding that an appeal from it may be taken under section 25a of the act (11 USCA § 48 (a). The appeal from the order approving the involuntary proceeding therefore was properly perfected. No appeal was taken from the order approving the petition in the voluntary proceeding.

■ The orders made in the voluntary proceeding directing Campbell to turn over the property to Allen present a controversy arising in a bankruptcy proceeding reviewable under section 24a of the act (11 USCA § 47 (a). Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897; Great Western Stage Equipment Co. v. Iles (C. C. A.) 70 F.(2d) 197. And the District Court had power to grant the appeal from them. General Orders in Bankruptcy, No. 36, 11 USCA following section 53; In re Times Square Auto Supply Co. (C. C. A.) 47 F.(2d) 210; Central Republic Bank & Trust Co. v. Caldwell (C. C. A.) 58 F.(2d) 721; Domenech v. Lee (C. C. A.) 66 F.(2d) 31; In re McLean & Sons (C. C. A.) 70 F.(2d) 307; McBee v. Palmer (C. C. A.) 73 F.(2d) 342; Marcell v. Engebretson (C. C. A.) 74 F.(2d) 93.

■ The respective orders overruling motions to dismiss and appointing trustees were made in a proceeding in bankruptcy from which an appeal could be allowed only by this court under section 24b, as amended (11 USCA § 47 (b). Campbell v. Alleghany Corporation, supra.

It follows that we have for consideration the order approving the petition in the involuntary proceeding and the orders in the voluntary proceeding directing Campbell to deliver the property to Allen as trustee. In all other respects the appeals must be dismissed.

. Coming now to the merits, we first consider the order approving the petition in the involuntary proceeding. The provisions of the act may be invoked by the corporation filing a petition with the court in whose territorial jurisdiction the corporation has had its principal place of business or its principal assets during the preceding six months or the greater portion of that time, or in any territorial jurisdiction in the state in which it was incorporated, stating the nature of its business, its assets, liabilities, capital stock, and financial condition; and alleging that it is insolvent or unable to meet its debts as they mature and that it desires to effect a plan of reorganization. Three or more creditors of a corporation having provable claims amounting in the aggregate to more than $1,000 in excess of the value of the securities held by them may file a petition with the court, if the corporation has not filed one or an answer in a proceeding of that kind, stating that the corporation is insolvent or unable to meet its obligations as they mature, and, if a prior proceeding in bankruptcy or receivership is not pending, that an act of bankruptcy has been committed within the preceding four months and that such creditors propose that it shall effect a reorganization. A copy of such petition shall be served upon the corporation and it is required to answer within ten days. At any time after a voluntary petition is filed or at any time after the period required for answer in case of a creditors' petition, the court shall hear the matter summarily and, if satisfied that the petition complies with the terms of the act and is filed in good faith, shall approve it; otherwise, it shall be dismissed.

■ Approval of the petition is the act through which jurisdiction of the court is acquired. It attaches to the debtor, and its property wherever situated is thereafter in custodia legis. That jurisdiction is exclusive for the purpose of administering the affairs of the debtor under the act. In case separate petitions are filed in different courts, priority of approval determines which court shall have jurisdiction; however, if a creditors' petition is filed and while it awaits approval—not after approval—the debtor files another with promptness, it has preference. Hamilton Gas Co. v. Watters (C. C. A.) 75 F.(2d) 176; In re National Department Stores (D. C.) 8 F. Supp. 19; In re Kelly-Springfield Tire Co. (D. C.) 10 F. Supp. 419.

■ But the validity of the approval here is attacked on several grounds. It is said that the petition shows on its face, and the evidence confirms the fact, that the petitioning creditors do not have any claims against the corporation in excess

of their securities. It is expressly alleged in the petition that they have provable claims of more than $1,000 in excess of their securities. Then follows the allegation that they hold and own bonds issued by the debtor upon which payments have been made and that the aggregate cash surrender value of such bonds is $2,786.50. The bonds are a direct obligation of the corporation and they contain a recitation that the corporation is required by the Charter Board of the State of Kansas to keep on deposit at all times as collateral security first mortgages on improved real estate in an amount at least 10 per cent. above its liabilities on all such bonds, less loans made upon them. But there is no evidence in the record that securities of that value were deposited or otherwise earmarked for that purpose. There is evidence that throughout the receivership the average market value of the bonds has been 50 per cent. of their specified cash value and that they have sold on the market for that price. Ordinarily, bonds or other commercial paper do not have a substantially less price on the market than the fair value of the security pledged or earmarked to insure their payment. The fact that the corporation is in receivership, that it admittedly cannot pay its debts as they mature, that these bonds have for about three years sold generally for 50 per cent. of their specified cash value, suggest strongly that the security does not exceed 50 per cent. of such specified value. The remainder, which is more than $1,000, has no security. The finding of the court that petitioners have provable claims of more than $1,000 in excess of their securities is supported by substantial evidence.

It is insisted that the petition was not filed in good faith. In support of that contention emphasis is placed upon the fact that the petitioning creditors did not employ counsel and were importuned by others having an interest in the matter to lend the use of their names; that the order overruling the motion to dismiss the petition and the order approving the petition were prepared by an attorney who did not represent any of the parties to the proceeding; and that after the court signed the order overruling the motion it was delivered to such attorney, who held it in his custody for several weeks before it was filed with the clerk. Some of the petitioning creditors were asked by persons desiring to effect a reorganization to lend the use of their names for that purpose, and they consented; but they understood that a reorganization was contemplated and that they were joining in that behalf at least to the extent of using their names. They did not know the technical procedure to accomplish that end, but that was not necessary. They favored a reorganization in the hope of realizing more from their investments and in consequence consented to the use of their names. The order overruling the motion to dismiss the petition and the order approving the petition were prepared by an attorney who did not represent any of the parties to the proceeding; and he held the order overruling the motion several weeks after the court signed it before it was filed with the clerk. He represented an outsider who desired to acquire the corporation after a satisfactory reorganization had been effected, and in furtherance of that desire he acquired some of its stock at about the time the involuntary proceeding was instituted. But according to the undisputed evidence, the court requested the attorney to prepare the orders and their correctness is not challenged either as to form or substance. The fact that the corporation sought a reorganization within two hours after the challenged finding was made has significance. Both petitioning creditors and the corporation concur in the contention that a plan of reorganization should be effected under the direction of the court, the only difference between them being the particular proceeding in which it shall be done. That is a very different situation from one in which a few dissenting creditors seek mischief in violation of the best interests of the debtor and other creditors. The evidence presented an issue of fact upon which the trial court passed. It has been repeatedly held that a finding of fact made by a chancellor is presumptively correct and will not be overturned on appeal unless a clear mistake was made in considering the evidence. Youngblood v. Magnolia Petroleum Co. (C. C. A.) 35 F.(2d) 578; Jonah v. Armstrong (C. C. A.) 52 F.(2d) 343; Jackson v. Jackson (C. C. A.) 67 F.(2d) 719; Standard Oil Co. of Colorado v. Standard Oil Co. (C. C. A.) 72 F.(2d) 524; Gorman v. Shaffer Oil & Refining Co. (C. C. A.) 74 F.(2d) 610. No mistake of that kind is shown here.

The further contention is advanced that an order signed by the court in

chambers during the absence of the parties does not become effective until it is filed with the clerk and in that way becomes public; that the order in question did not reach the clerk until Monday morning, after the order approving the voluntary petition had been signed and entered, and hence it never became effective. The contention is without merit. A judgment or an order of a court of record becomes effective when it is announced in open court or is signed either in open court or in chambers with prompt delivery to the clerk for entry in the records. The announcement or signature of the court is the judicial act and constitutes the rendition of the judgment or the making of the order; its enrollment in the records of the court is a ministerial act which supplies evidence of its existence. The order under review became effective at the time the court signed it and delivered it to his secretary to be mailed to the clerk for entry. Continental Oil Co. v. Mulich (C. C. A.) 70 F.(2d) 521; Dalton v. Bowers (C. C. A.) 53 F.(2d) 373; In re Neagle (C. C.) 39 F. 833, 5 L. R. A. 78; Montgomery v. Viers, 130 Ky. 694, 114 S. W. 251; Beetchenow v. Bartholet, 162 Wash. 119, 298 P. 335; Black on Judgments, § 106.

Turning now to the orders made in the voluntary proceeding directing Campbell to deliver the property of the debtor to Allen as trustee, they were erroneously entered because the order approving the petition in that proceeding was entered without jurisdiction. We deal with two proceedings, but only one court. It had jurisdiction of the subject-matter, but that jurisdiction had been exercised by the approval of the involuntary petition almost two hours previously. By that action jurisdiction attached to the debtor and its property was in custodia legis. It was exhaustive and exclusive of subsequent action identical in nature. It could not be exercised by repetition. There remained no unexhausted reservoir of jurisdiction upon which the court could draw in approving the voluntary petition. How could a party already before the court and property already in custodia legis be brought again into that identical status? The question furnishes its own answer.

 The last turnover order cannot be sustained for another reason. It was based upon a determination of the court made in the voluntary proceeding that the order approving the petition and the order appointing a trustee in the involuntary proceeding were void. It is well settled that in such circumstances the deliberate judicial acts of one judge are not open to review by another judge of the same court having co-ordinate jurisdiction. That is a salutary rule of comity which rests upon sound considerations of necessity. Any other would strike down orderly procedure and substitute unseemly conflict in its stead. The respective orders approving the petition and appointing a trustee in the involuntary proceeding could be reviewed only by appeal to this court. They were not open to review by the other judge of that court in the voluntary proceeding. Pickwick-Greyhound Lines v. Shattuck (C. C. A.) 61 F.(2d) 485; Plattner Implement Co. v. International Harvester Co. (C. C. A.) 133 F. 376; Commercial Union v. Anglo-South American Bank (C. C. A.) 10 F.(2d) 937; Hardy v. North Butte Mining Co. (C. C. A.) 22 F.(2d) 62; Jurgenson v. National Oil & Supply Co. (C. C. A.) 63 F.(2d) 727; In re Insull Utility Investments (C. C. A.) 74 F.(2d) 510.

The order approving the petition in the involuntary proceeding is affirmed; the orders directing Campbell to deliver the property of the debtor to Allen as trustee are reversed and remanded, with direction to consolidate the voluntary proceeding with the involuntary and that all subsequent action be had in the latter; and in all other respects the appeals are dismissed.