188 So.2d 836 (1966)
Thomas N. GOSSETT and Elmer R. Watson, Appellants,
v.
STATE of Florida, Appellee.
No. 6610.
District Court of Appeal of Florida. Second District.
July 20, 1966.
Robert E. Pyle, Asst. Public Defender, Clearwater, for appellants.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
This is an appeal in a criminal case from the Circuit Court for Pinellas County by the defendants Thomas N. Gossett and Elmer R. Watson, hereinafter referred to as Gossett and Watson, who were charged, convicted, and sentenced therein for the offense of breaking and entering a building other than a dwelling house, with intent to commit a felony. The sole issue in the *837 case is the legality of the arrest of defendants and the consequent search of their persons and the seizure of certain articles of personalty thereon. The issue was fully raised by the filing by defendants of a motion to suppress the evidence prior to trial, and the renewal thereof on the morning of the trial, both of which motions to suppress were denied. At the trial, timely objections were repeatedly made to the introduction into evidence of the fruits of the arrest, search and seizure, which objections were overruled. From the judgment of conviction entered against them, each of the defendants have appealed to this Court and assign as sole error here the actions of the trial Judge which resulted in the ultimate admission into evidence against them of the incriminating articles of personalty so seized from them. Such articles were subsequently found to be the loot from the burglary of the Dunedin Country Club.
The facts leading up to the alleged unlawful seizure of the articles in question are interesting and not too complicated. At approximately 11:30 P.M. on a Sunday evening, May 16, 1965, the night watchman for Dunedin Country Club, one Newton, observed a 1957 Thunderbird automobile pull into and park on a driveway leading to the Club, with two men in it. Newton left for a coffee break and upon returning about an hour and a half later observed the vehicle with only one man in it. Newton then communicated with the local police and at about 1:20 A.M. Dunedin police officer Raney arrived and held brief conversation with the occupant of the car, who, when he could produce neither a driver's license nor an automobile registration, was ordered out of the car by Raney. He got out and started back toward Raney's cruiser as directed, when suddenly he whirled around, struck Raney, and fled. Raney then radioed his headquarters, reported what had happened, and shortly thereafter two deputy sheriffs, Stevenson and McAllister, appeared on the scene with a bloodhound dog. The dog apparently picked up the man's scent and they followed the dog for about thirty minutes, at which time officer Raney, who had been cruising the area, came upon Stevenson and McAllister and informed them that some "citizen" had reported seeing two men running, one of whose clothing resembled that of the man sought. The officers then abandoned the trail they had originally been following with the dog and moved approximately 500 yards away where the two men had reportedly been running. They then began following "a new trail" and after so following it for about two miles deputy Stevenson, who was ahead of McAllister about 50 or 75 yards, came upon defendants Watson and Gossett in a derelict orange grove, crouched down between two dead orange trees. Thereupon officer Stevenson yelled to the defendants, "You are under arrest, hold your hands up." The defendants followed instructions, they were searched at gunpoint, thrown to the ground, and handcuffed. Watson was found to have a pistol inside his beltline and further search of their persons revealed the articles from the Country Club.
We must hold the arrest of Watson and Gossett to have been invalid and the ensuing search of their persons and seizure of the articles upon their persons illegal, hence their admission as evidence at the trial to be reversible error; provided the record filed here is such that we can reach the merits.
Florida Appellate Rule 3.2(b), 31 F.S.A. provides that appeals (in civil cases) shall be commenced within 60 days from the rendition of the final decision, order, judgment or decree appealed from. F.A.R. 1.3 defines the "rendition" of a judgment, decision, order or decree to mean that it has been reduced to writing, signed and made a matter of record, or if recording is not required, then filed. The record here shows that judgment and sentence was entered separately against Gossett and Watson, and the Minute Book and page of the Court whereon the same were contained is indicated, but the record does not show that either judgment and sentence has ever been *838 signed by the Judge, as required by said Rule 1.3 and also by F.S. Section 28.21(1) F.S.A.
In Egantoff v. Herring, Fla.App. 1965, 177 So.2d 260, an appeal in a civil case, this Court held that a judgment which is evidenced only by an unsigned Minute Book entry in the record was not an appealable judgment and that an attempted appeal therefrom must be dismissed. The Egantoff holding of this Court was upheld by the Supreme Court of Florida in State of Florida ex rel. Herring v. Allen, et al., Fla., 189 So.2d 363, opinion filed May 25, 1966.
The case sub judice is an appeal in a criminal case and is ruled by PART VI of the Florida Appellate Rules. Rule 6.2 provides that an appeal by a defendant in a criminal case shall be taken within 90 days "after the judgment is entered." (Emphasis supplied). Rule 6.1 provides that appeals to this Court in Criminal cases shall be prosecuted in accordance with said PART VI and "with such provisions of other parts of these rules as are not inconsistent with the provisions of Part VI." This brings us to the question of what is meant by "entered."
The word "entered" is given no definition under Rule 1.3 (the definition rule), and it was our preliminary conclusion that it was probably synonymous with the word "rendition" which is therein defined and was implicit in determination of Egantoff; and we found nothing in the Florida decisions or in any of the recognized encyclopedias to refute our assumption. But in the current Fourth Edition of Black's Law Dictionary, on page 625, we find the following significant statement:
"Entry of judgment differs from rendition of judgment. `Rendition' of a judgment is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy. The `entry' is a ministerial act, which consists in spreading upon the record a statement of the final conclusion reached by the court in the matter, thus furnishing external and incontestable evidence of the sentence given, and designed to stand as a perpetual memorial of its action. Jaqua v. Harkens, 40 Ind. App. 639, 82 N.E. 920, 922; Beetchenow v. Bartholet, 162 Wash. 119, 298 P. 335, 336."
Based upon the last quoted language, and the use of the word "entered" in Rule 6.2 providing for appeals in criminal cases rather than the word "rendition" used in Rule 3.2(b) providing for appeals in civil cases, we hold that a Minute Book entry of a judgment in a criminal case, even though not signed by the Judge, is appealable. Such determination permits us to pass to the merits.
F.S. Section 901.15 F.S.A. sets out the occasions when an officer without a warrant may make a lawful arrest, as follows:
"901.15 When arrest by officer without warrant is lawful
"A peace officer may without warrant arrest a person:
"(1) When the person to be arrested has committed a felony or misdemeanor or violation of a municipal ordinance in his presence. In the case of such arrest for a misdemeanor or violation of a municipal ordinance, the arrest shall be made immediately or on fresh pursuit.
(2) When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it.
(3) When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it.
(4) When a warrant has been issued charging any criminal offense and has been placed in the hands of any peace officer for execution. As amended, Laws 1943, c. 21782, § 1."
*839 It is obvious that Watson and Gossett, under the circumstances hereinbefore narrated, were arrested on suspicion only. When officer Stevenson yelled to the defendants "You are under arrest, hold your hands up," and then he and officer McAllister proceeded at gunpoint to handcuff them, throw them on the ground, and search them minutely, neither of the officers had any knowledge that the defendants were then committing any felony or misdemeanor or violating any municipal ordinance. Neither did the officers have reasonable ground to believe that the defendants had committed or were committing a felony, or in fact that any felony had been committed.
When officers Stevenson and McAllister started out with the bloodhound they were trailing only one man whom they suspected of having assaulted officer Raney. While still on the trail of the one man, the officers heard a rumor through officer Raney, who drove up, that an unknown citizen was supposed to have seen two men somewhere else in the vicinity. The officers then abandoned the trail of the one man and went off looking for the two men, neither of whom was the object of the original search with the bloodhound. Officer Raney later testified at the trial that the man who assaulted him outside of the Country Club was neither of the defendants.
If the arrest was unlawful, the subsequent search and seizure were likewise unlawful. An otherwise invalid arrest cannot be made valid by what was found or discovered after the arrest was made. And an unlawful search cannot be made lawful by what is disclosed or found by virtue of the search.
In Waters v. Ray, Fla.App. 1964, 167 So.2d 326, 330, the Court said:
"It is well settled that an arrest without a warrant for a misdemeanor to be lawful can only be made if the offense was committed in the presence of an officer  that is it must have been within the presence or view of the officer in such a manner as to be actually detected by the officer by the use of one of his senses."
The arrest here did not meet that test.
As was said by the Supreme Court of Florida in Borrego v. State, Fla. 1952, 62 So.2d 43: "[i]t is more important that the Constitution be upheld and fundamental rights guaranteed by it be protected, than it is for a conviction to be obtained in a particular case with illegal evidence."
Since the arrest and search were illegal, the seizure under such circumstances of any articles from the persons of defendants was unlawful, and admission of such illegally procured articles into evidence at their trial was erroneous and constituted reversible error.
Reversed and remanded.
LILES, Acting C.J., and HOBSON, J., concur.