### In re JOSLYN'S ESTATE.

### FISHER v. YOUNG et al.
### No. 9377.

Circuit Court of Appeals, Seventh Circuit.
June 4, 1948.

As Amended on Denial of Rehearing
July 20, 1948.

Cassius M. Doty, Preston Boyden and Jay Fred Reeve, all of Chicago, Ill., for appellant.

George E. Leonard, Alvin Glen Hubbard and Robert B. Johnstone, all of Chicago, Ill., for appellees.

Before KERNER and MINTON, Circuit Judges, and STONE, District Judge.

STONE, District Judge.

On February 27, 1936, George R. Joslyn filed a voluntary petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, and was on that day adjudicated a bankrupt.

The schedules listed no administrable assets, the total value being given as $375.50 of exempt personal property. The schedules disclosed as a debt, the claim of William L. O'Connell, Receiver of the defunct Chicago Bank of Commerce, Chicago, Illinois, arising out of the bankrupt's stockholder's liability on 1,142 shares of the bank's capital stock having a par value of $50.00 per share. There being no administrable assets, no claims were filed, no trustee was appointed, and the bankrupt was thereafter, on June 29, 1936, discharged and the proceedings closed.

Approximately ten years later, on May 20, 1946, the bankruptcy proceedings were reopened on the Application of the Benevolent and Protective Order of Elks, a creditor of the defunct Chicago Bank of Commerce, and an alleged creditor of the bankrupt by virtue of the bankrupt's statutory liabilities as a stockholder of the bank. The attorney for the petitioner was Thomas Hart Fisher, hereinafter referred to as Fisher.

The Application to Reopen alleged that six months prior to the filing of the voluntary bankruptcy proceedings, the bankrupt's parents had created two so-called "Joslyn Trusts", dated respectively August 14 and 15, 1935, pursuant to which the bankrupt had received and then owned a vested equitable life estate in 11,250 shares of the capital stock of Joslyn Mfg. and Supply Company.

On January 4, 1946, the bankrupt filed an amended schedule of his assets in which he valued his life estates under the Joslyn Trusts at the sum of $546,757.30. The schedules included the additional item of $70,312.50 as income from the trust estates that had accrued from June 5, 1944, to January 4, 1946, the income being approximately $40,000.00 per year.

During the period from January 1938 to June 1946, Fisher claims to have rendered services as attorney for the bankrupt's wife in a divorce action and other State Court litigation. That during such time he expended on her behalf the sum of $12,846.36, exclusive of the sum of $5,320 that he advanced to her for living expenses for herself and four children in 1944 and 1945, and repaid to him by Mrs. Joslyn in January 1946, and that there is now a balance due him from her for services and disbursements, in the sum of $65,674.22.

When Fisher was employed to file the petition to reopen the bankruptcy proceedings he terminated his employment as Mrs. Joslyn's attorney in relation to any action she might thereafter commence in said proceedings.

In the bankruptcy proceedings a restraining order was entered enjoining The First National Bank of Chicago, the Trustees of the Joslyn Trusts, and the bankrupt

from disposing of any of the property or funds in their possession belonging to the bankrupt. Thereafter, on December 27, 1945, the bankrupt's attorney represented to the District Judge that the bankrupt was then in arrears on his alimony and support payments to his wife and children to the extent of $9,000; that he had borrowed $4,000 to make alimony payments to his wife; that at that time the bankruptcy funds on deposit were approximately $70,000. Fisher at that time informed the Court that the alimony payments were based on a contract arising out of a judgment in a divorce action that said contractual rights constituted an equitable lien in Mrs. Joslyn's behalf upon the Joslyn trust funds and all further moneys accruing to the trust estate.

The attorneys had requested the Court to modify the restraining order so as to release to the bankrupt the sum of $13,000 on condition that $9,000 thereof would be paid immediately by the bankrupt to his former wife as alimony and for the children's support, and that the balance of $4,000 would be used by the bankrupt to reimburse him for disbursements he had previously made.

Relying upon statements made by the bankrupt's attorney and by Fisher, the Court entered an order releasing unconditionally $13,000 of the bankruptcy funds on deposit to the bankrupt.

At that time Fisher had written assignments from Mrs. Joslyn assigning to him her equitable lien on the trust funds to insure the payment of her indebtedness to him. He withheld knowledge of this fact from the Court and the bankrupt's attorney.

Upon receipt of the $13,000 the bankrupt paid his divorced wife, Mrs. Joslyn, who then resided in Williamstown, Massachusetts, the sum of $5,500. She thereafter paid Fisher $5,320 of said sum to reimburse him for moneys alleged to have been advanced to her by Fisher for the support and maintenance of herself and children during the time that the bankrupt had failed to make the required payments of alimony and support money to her.

When the Trustee in Bankruptcy learned that Mrs. Joslyn had paid Fisher the sum of $5,320 as aforesaid, and that Fisher claimed an equitable lien against the funds and property arising out of the so-called "Joslyn Trusts", he petitioned the Court that Fisher be required to turn over the moneys he received from Mrs. Joslyn to the Trustee in Bankruptcy and for an order restraining Fisher from attempting to assert in Bankruptcy Court or elsewhere his alleged equitable lien.

In a summary proceeding the Court found that the bankrupt was on the date of his adjudication as a bankrupt, the owner of a vested equitable life estate in the Joslyn Trusts and that title thereto on that day vested in the Trustee in Bankruptcy; that the assignment from Mrs. Joslyn to Fisher was upon its merits "absolutely void and of no effect"; that Fisher had never had any lien or valid claim to a lien upon the funds in question; that Fisher's representations to the Court in these proceedings were wilfully false in material respects; that the entire activities in the premises and particularly his activities with reference to the obtaining of $5,320 in direct violation of the expressed wishes and indications of the Court in freeing said sum from the restraining order previously entered constituted gross fraud upon the Court and upon the bankruptcy estate and upon the creditors thereof; that Fisher's acts were at all times motivated by his own self interests to procure a financial advantage to himself in his individual capacity, and that he wilfully obstructed efforts to obtain an early settlement of the matter in controversy in the bankruptcy estate. The Court found as a conclusion of law that it had summary jurisdiction of Fisher individually and as an attorney and officer of the Court in the premises; that Fisher's rights, if any, to the alleged lien were acquired by him subsequent to the adjudication in bankruptcy; that the Trustees were entitled to an order directing Fisher to forthwith release his alleged claims against the First National Bank of Chicago, the Trustees of the Joslyn Trusts, and the bankrupt; and for a permanent injunction for-

ever restraining Fisher from asserting or attempting to assert any claim based upon the alleged assignments; that the claim of Fisher be dismissed with prejudice to the rights of Fisher to ever assert in this or any other proceedings any claim or assignment based on any of the matters set forth therein or related thereto; that an order be entered directing Fisher to pay to the Trustee in Bankruptcy forthwith the sum of $5,320 and all stenographic charges incurred in these proceedings since December 18, 1946, and that an order permanently restraining Fisher from interfering with the consummation of a pending settlement of the matters in controversy in the bankruptcy proceedings pursuant to the petition of the bankrupt on January 23, 1947, be entered.

The Court then entered the order which reads in part as follows:

"1. That Thomas Hart Fisher forthwith release his alleged claim for an equitable lien herein against The First National Bank of Chicago, the Trustees of the Joslyn Trusts, and the Bankrupt herein, and execute any and all documents and papers necessary to fully protect said parties from the further prosecution of his said alleged claim more completely described in the Findings of Fact and Conclusions of Law this date filed herein.

"2. That said Thomas Hart Fisher, his agents, employees and assigns, be and they are hereby permanently restrained and enjoined from the prosecution or further prosecution of the claim asserted and set forth in Paragraph 2 of the response entitled, 'Special and Limited Appearance of Thomas Hart Fisher', filed herein January 15, 1947, or asserting or prosecuting any other claim arising out of the same subject matter.

"3. That the said claim of Thomas Hart Fisher is hereby dismissed, and said Thomas Hart Fisher, his agents, employees or assigns, be and they are hereby permanently restrained from asserting the same in this or any other proceeding.

"4. That said Thomas Hart Fisher be and he is hereby directed to pay Horace A. Young, Trustee in Bankruptcy herein, forthwith the sum of $5,320.

"5. That said Thomas Hart Fisher, Norman Crawford and his and their agents, attorneys and employees, be and they are hereby permanently restrained and enjoined from in any way interfering or attempting to interfere, by engineering appeals in the name of other persons, or otherwise, with the consummation of the settlement presented pursuant to the Petition of the Bankrupt filed herein January 23, 1947.

"6. That the Trustee in Bankruptcy herein is directed to report the total of all stenographic and court reporter's expense incurred by him and by his counsel since December 18, 1946, to Roy H. Johnson, Clerk of this Court, and that the same shall be taxed as costs of this proceeding by said Clerk, and upon the taxing of the same Thomas H. Fisher be, and he is directed to pay the amount thereof to the Trustee in Bankruptcy forthwith.

"Dated, Chicago, Illinois,

"January 24, 1947.

The question presented on this appeal is whether the Bankruptcy Court had summary jurisdiction to enter the order of January 24, 1947, appealed from.

When the $13,000 was released by the Court in December 1945 and paid to the bankrupt, he was not then insolvent as disclosed by the statement he filed in these proceedings showing his assets to be $656,-569.80, and his liabilities $81,479.60.

■ The payment of the $5,320 to Fisher and the assignment of the lien was completed long after the original bankruptcy was closed and before the proceedings were reopened in May 1946. Neither the money or the lien rights involved herein was at the time in question, property of the bankrupt estate, in the possession, actual or constructive, of the bankruptcy Trustee. It was not administrable property in bankruptcy and the Bankruptcy Court had no summary jurisdiction over it.

■ The law is well established that a Bankruptcy Court does not have summary jurisdiction over a turnover proceeding to recover an alleged indebtedness due from a third party to the bankrupt estate, or on property rights claimed by an adverse par-

ty who is in possession and makes timely objections to the summary jurisdiction.

In the case of Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 405 it was held that summary turnover orders may only be entered to recover possession of chattels or their proceeds, and may not be entered to recover damages for the withholding or for the value of the property. That summary turnover proceedings are not appropriate to recover "damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets."

■ The money and property rights involved in these proceedings were neither "chattels or their proceeds" which is a requirement and a necessary foundation of a turnover proceeding under the rule as defined in the foregoing case.

In Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 156, 89 L.Ed. 97, the Court said:

"A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876. If the property is not in the court's possession and a third person asserts a bona fide claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' * * * It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. Louisville Trust Co. v. Comingor, 184 U.S. 18, 25, 26, 22 S.Ct. 293, 296, 46 L.Ed. 413. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. MacDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093.

"Consent to proceed summarily may be formally expressed, or the right to litigate the disputed claim by the ordinary procedure in a plenary suit, like the right to a jury trial, may be waived by failure to make timely objection. MacDonald v. Plymouth County Trust Co., supra, 286 U.S. at pages 266, 267, 52 S.Ct. at page 506, 76 L.Ed. 1093. Consent is wanting where the claimant has throughout resisted the petition for a turnover order and where he has made formal protest against the exercise of summary jurisdiction by the bankruptcy court before that court has made a final order."

Cline v. Kaplan, 323 U.S. 97, 98, 99, 65 S.Ct. 155, 89 L.Ed. 97.

In the proceedings on the turnover petition, appellant entered a special and limited appearance and denied that the Bankruptcy Court had summary jurisdiction over his personal claims and property rights and at no time consented to have the validity of those claims or rights determined in the bankruptcy proceedings.

It is clear that the Bankruptcy Court had no summary jurisdiction to enter the orders appealed from.

The judgment of the District Court is reversed with directions to vacate and set aside the orders appealed from.

Nothing said in this opinion as amended shall be taken as an adjudication of any question as to whether the Benevolent and Protective Order of Elks was a creditor of George R. Joslyn and capable of filing the petition to reopen the bankruptcy proceedings nor any question as to the trusts known as the Joslyn Trusts being administrable assets of George R. Joslyn in bankruptcy.