### In re JOSLYN'S ESTATE.

### Appeal of BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF UNITED STATES.

### Appeal of HILLMER.

### YOUNG v. JOSLYN et al.

Nos. 9626, 9656, 9657.

United States Court of Appeals
Seventh Circuit.

Dec. 3, 1948.

Rehearing Denied Jan. 4, 1949.

**1. Bankruptcy** ⚖=18(1)

Robert B. Johnstone, Jay Fred Reeve, Preston Boyden, C. M. Doty, George E. Leonard and Horace A. Young, all of Chicago, Ill. (Leonard & Leonard, of Chicago, Ill., of counsel), for appellants.

Horace A. Young, pro se.

Alvin G. Hubbard, Joseph A. Conerty and Robert McClory, all of Chicago, Ill. (Francis L. Daily, Daily, Dines, White & Fiedler, all of Chicago, Ill., of counsel), for appellees.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

MAJOR, Chief Judge.

These are appeals from a decree entered June 1, 1948, dismissing sua sponte a bankruptcy proceeding. The appeals are by Horace A. Young, trustee in bankruptcy, the Benevolent and Protective Order of Elks, an asserted creditor (herein-

after referred to as the Elks), and Armin F. Hillmer, as representative of all creditors of the Chicago Bank of Commerce.

The issues before this court are numerous and not easy of exact ascertainment. Preliminary to what we regard as the more important issues, it appears pertinent to state briefly the salient events which have occurred in this prolonged and in many respects unsavory proceeding, and in doing so we shall take no cognizance of the many charges and counter-charges made by and against numerous of the attorneys who have participated in the proceedings, some of which do no credit either to those participating or to the Bar.

George R. Joslyn was adjudicated a voluntary bankrupt on March 5, 1936. The case took its usual course, and an order of discharge was entered on June 29, 1936. Almost eight years later, on May 29, 1944, an application to re-open the proceeding was filed in the District Court by the Elks, acting through its attorney, Thomas H. Fisher. For the present it is sufficient to note that it was alleged in the application to re-open the proceeding that the Elks was a creditor of the Chicago Bank of Commerce of Chicago, Illinois, then in the process of liquidation in the state court in the amount of $120,073.51, and that George R. Joslyn was the owner of 1142 shares of the capital stock of said bank and was liable as such stockholder in the sum of $57,100.00. The application also alleged that the bankrupt had fraudulently concealed assets and had fraudulently concealed from the applicant and other creditors the existence of the bankruptcy proceeding.

The application to re-open was referred to Referee Nathan William MacChesney, acting as Special Master, who conducted long and protracted hearings which were participated in by all interested parties. The Special Master's report was filed on November 15, 1945, and found in substance and effect that the purpose of the bankruptcy was fraudulent in that the bankrupt sought to escape his stockholder's liability of $57,100.00 to the creditors of the defunct Chicago Bank of Commerce by (1) failing to schedule his assets, and (2) failing to list his true creditors.

While there are numerous items of assets found by the Special Master to have been concealed, they are of minor importance except the bankrupt's interest in two trusts (called the Joslyn trusts) created by his father and mother respectively on August 14 and 15, 1935. It was claimed before the Master as well as throughout the proceedings that the bankrupt on February 27, 1936, at the time he filed his voluntary petition, had received and then owned two vested equitable life estates in 11,250 shares of the capital stock of Joslyn Manufacturing and Supply Company, which formed the corpus of said trusts.

The finding by the Referee concerning the bankrupt's failure to list his true creditors arises in the main from the fact that in his original schedules he listed as a creditor William L. O'Connell, Receiver of the Chicago Bank of Commerce. The Referee found that there was no debt on account of such stockholder's liability running to O'Connell. The Elks contends in its application to re-open and still contends that it, as a depositor in the defunct bank, was entitled to maintain a claim on account of such stockholder's liability. This is a controversial question which has persisted throughout the litigation.

On May 20, 1946, Judge John P. Barnes, to whom the report of the Referee had been made, entered an order re-opening the bankruptcy proceedings and directing that a meeting of creditors be held for the purpose of acting upon the matter of the appointment of a trustee. Such meeting was held and Horace A. Young was elected trustee. He is still acting in such capacity and, as noted, is an appellant in the instant matter. The bankrupt was given leave to file amended schedules and under schedule 4 described the trust instruments and his interest therein without prejudice to his right to establish that said interests are not property which may be administered in bankruptcy.

With regard to the question of costs, the Elks moved for an order taxing the costs of the proceedings before the Special

Master against the bankrupt, and Judge Barnes on December 3, 1946, over the objection of the bankrupt, allowed the motion. On the same date he entered an order in which he itemized such costs, including the Master's, Referee's and court reporter's fees in the total amount of $6,632.50, and "ordered, adjudged and decreed that George R. Joslyn pay said fees and expenses." In the same order he directed that the Special Master return to Thomas H. Fisher, attorney for the Elks, certain fees which had been advanced by him. This order directing that the costs be paid by Joslyn enters into the picture for the reason that in the order appealed from such costs were taxed to the Elks.

On December 23, 1946, the trustee filed what is designated as a cross-petition against the bankrupt for a turn-over order, claiming that the bankrupt's vested life estates in the Joslyn trusts were subject to administration as a part of the bankruptcy estate. It was also alleged that in addition to the bankrupt's interest in such trusts there had been discovered certain assets of the bankrupt totaling $4,195.47. (A portion of these assets were conceded in the amended schedule as filed by the bankrupt.) On December 26, 1946, the trustee filed another petition for a turn-over order against the First National Bank and the trustees under the Joslyn trusts, in which he claimed that the bank held deposited funds of $89,057.35, derived from the bankrupt's vested life estates in the Joslyn trusts, and that under the provisions of the Bankruptcy Act and the laws of the State of Illinois, the trustee was entitled to this income as of the date of the bankrupt's original jurisdiction.

Answers to such turn-over proceedings were filed by the bankrupt, the First National Bank and the Joslyn trustees, in all of which the summary jurisdiction of the bankruptcy court over the deposited funds and the bankrupt's vested equitable life estates in the Joslyn trusts was challenged.

It is also pertinent to note without going into detail that a divorce proceeding was pending in the state court of Chicago between Charlotte C. Joslyn, represented by Thomas H. Fisher, and her husband, George R. Joslyn. Fisher, in connection with the application to re-open the bankruptcy proceeding, obtained a restraining order against the First National Bank, enjoining it from paying out the money which it held, being the income from the trusts. The impact which the restraint on this fund had upon the bankruptcy proceeding furnished the basis for much controversy, which we think is immaterial at this time. It should be mentioned perhaps that certain of these funds were by order of the bankruptcy court released for the benefit of Mrs. Joslyn, a portion of which found their way into the hands of her attorney, Fisher.

On January 13, 1947, the trustee filed a petition for a turn-over order against both Mrs. Joslyn and Fisher, in response to which Fisher on January 15, 1947 filed his answer, in which he challenged the jurisdiction of the court.

This brings us to one of the important episodes in this involved proceeding. Commencing on January 17, 1947, Judge Barnes conducted a hearing which lasted for a week, apparently upon all matters then pending. At any rate, all the parties now before this court appear to have been present and participating. In addition to the matters pending, which we have noted, there was the offer by the bankrupt of a substantial sum in settlement of the creditor's claim filed by the Elks, and it is clearly shown that both at that time and subsequently the stumbling block in this effort to compromise was Thomas H. Fisher, either in his capacity as attorney for the Elks or for Mrs. Joslyn, or both. As a result of this hearing, the court entered its findings of fact, conclusions of law and its order of January 24, 1947. Certain findings made by the court at that time relative to the bankrupt's interest in the trust estates furnish the basis for one of the material controversies presented on this appeal and will be subsequently referred to. It may be noted that none of the parties participating in the hearing which culminated in this order appealed except Thomas H. Fisher, and that portion of the order directed at him was reversed

by this court. Fisher v. Young, et al., 7 Cir., 168 F.2d 803.

On January 24, 1947, the bankrupt, still desirous of effecting a compromise with his creditors, deposited $45,000.00, plus a sum necessary to pay all the costs, fees and expenses in the bankruptcy case, with the clerk of the bankruptcy court. By that time much ill feeling had been engendered between certain attorneys in the matter, and for reasons not here material Judge Barnes on March 12, 1947 transferred the cause to the executive committee of the District Court, which on the same day reassigned the same to Judge Shaw.

On April 8, 1947, the matter came on before Judge Shaw for a hearing which culminated in the order appealed from. There is no way of discerning the issues which were before the court at that time except by a colloquy which took place between the court and counsel, which occupies some 25 pages of the printed transcript. It does appear that all interested parties were represented by counsel, including the trustee, the bankrupt, the trust trustees, the First National Bank and the Elks. A new counsel appeared for the latter as a substitute for Fisher. The record discloses that the trustee and Fisher were present and participated in the colloquy. It appears that all the parties recognized the compromise offer as the predominant issue before the court, but that before the colloquy concluded other issues then pending in the proceeding were discussed. No oral testimony was presented, but at the conclusion of the colloquy Judge Shaw requested that all parties submit briefs on the issues which had been discussed, all pending petitions and a transcript of the proceedings which had theretofore taken place before Judge Barnes. On February 16, 1948, Judge Shaw rendered a written opinion, and on June 1 made his findings of fact and conclusions of law.

Also on June 1, 1948, Judge Shaw entered the decree from which this appeal comes, which disapproved the proposed compromise settlement and directed that there be returned to the bankrupt the $45,000.00 which had been deposited with the court clerk for such purpose; taxed the costs of the proceeding, including the fees of the Special Master in the proceeding before Judge Barnes, to the Elks; dissolved the restraining orders directed at the trust trustees and the First National Bank, and provided: "That the application to reopen the within bankruptcy proceedings and all petitions and other matters pending by reason of said Application to Reopen be and the same are hereby dismissed by this Court, sua sponte with the exception of and without prejudice to any ancillary matters pending before any other judge of this court or in any other court."

The decree concluded by limiting the power of the trustee to the protecting of his rights in the judgment entered on January 24, 1947, against Thomas Hart Fisher, then pending before this court on appeal (since decided, 168 F.2d 803).

The contested issues as stated by the various parties are irreconcilable. We are of the view, however, that those stated by the trust trustees come nearest meeting the situation. The issues thus stated are as follows:

"1. Whether the District Court had the authority to dismiss sua sponte the proceeding before it upon its disapproval of an offer of compromise, on the ground that it was against the public interest to continue such proceeding;

2. Whether the Order of January 24, 1947, entered against Thomas Hart Fisher was an adjudication against the Joslyn Trustees or the First National Bank of Chicago respecting the interest of George R. Joslyn in the Joslyn Trusts; and

3. Whether the possibility of a recovery against the Joslyn Trustees of the interest of George R. Joslyn in the Joslyn Trusts is such that the reopened proceedings should be continued to enable the bankruptcy trustee to pursue further litigation."

There is also the issue raised by the Elks that the court erroneously assessed the costs against it. While the matter is not free from doubt, we are of the view that the sole issue which the court intended to decide was that presented by the bankrupt's offer to compromise. The court in its opinion, after reviewing the proceedings

164

before Judge Barnes, stated: "A change of venue from the first judge brings the matter to my court for consideration of a petition to approve an offer of compromise made by Joslyn and the trustees under the trusts and approved by the Trustee in Bankruptcy.

"In fact everyone wants it approved— Joslyn to free him from further harassment and all others because it means some quick money."

We are now presented with the rather anomalous situation wherein the parties agree that the court's refusal to authorize the compromise is not material because the offer has been withdrawn and there is no longer any issue relevant thereto. The court in its opinion expressed the view that the compromise was not in the public interest because the offer was obtained by extortion, and after expressing doubt that the court had the power to approve such a compromise stated that it would not do it even if it had the power. Two reasons were assigned in the court's opinion for its position, (1) that the Elks as a depositor in the defunct bank had no claim which could be prosecuted in the bankruptcy proceeding, and (2) that the bankrupt's interest in the trusts was not administrable in bankruptcy.

In view of our conclusion that the order appealed from must be reversed, we think it would be well, even though not essential in all respects to a consideration of the issues argued here, to consider what if any orders entered by Judge Barnes were res adjudicata and therefore not open to a consideration by Judge Shaw. There are three of such orders or claimed judicial rulings in this category: (1) his order of May 20, 1946, re-opening the proceedings; (2) his order of December 3, 1946, taxing the fees and expenses to the bankrupt, and (3) the order of January 24, 1947, which the trustee urges was a final decision that the bankrupt's interest in the trusts was administrable in bankruptcy and that title thereto had become vested in the trustee as of the date of the voluntary adjudication in 1936.

■ Without entering a discussion of the cases as to when one Judge in a bank-

ruptcy proceeding may review the orders of another, the rule appears to be that such an order is not reviewable if judicial in character. See In re Insull Utility Investments, 7 Cir., 74 F.2d 510, 515 (and cases cited), and Humphrey v. Bankers Mortgage Co., 10 Cir., 79 F.2d 345.

■ It appears to have been the view of Judge Shaw, at any rate it is argued here, that the order re-opening the proceeding was reviewable by him because the application to re-open was instituted by the Elks, which has been found not to be a creditor. We think this argument is without merit, and this irrespective of the status of the Elks as a creditor. We see no reason why the court, when its attention was called to the fact that the bankrupt had fraudulently concealed assets, could not on its own volition have 'conducted an investigation or referred the matter to a Special Master, as it did, for the purpose of conducting such inquiry and making a report. The re-opening order states that the cause came on to be heard upon the report of the Special Master and that the court does "order that this proceeding be and the same is hereby re-opened." Thus, the order is not predicated upon the application of the Elks but upon the report made by the Special Master. It has been held that it is the duty of the bankruptcy court to re-open closed bankruptcy estates whenever prima facia proof has been made that they have not been fully administered. In re Newton, 8 Cir., 107 F. 429; In re Pierson, D. C., 174 F. 160; In re Sanders, D.C., 20 F. Supp. 98; Williams v. Rice, 5 Cir., 30 F.2d 814. In our view, the re-opening order was judicial, final and binding upon all the parties, and certainly no question can be raised by the bankrupt because in the same order, at his request, he was given leave to file amended schedules.

■ On the other hand, we think the order of Judge Barnes taxing the costs against the bankrupt was not judicial. In the language of the authorities, it was an administrative order and consequently subject to be vacated or modified by another Judge. The later order of Judge

Shaw taxing such costs to the Elks will be subsequently referred to.

The trustee, in support of his contention that the action of Judge Barnes on January 24, 1947 constitutes a judicial ruling and determination that the bankrupt's interest in the trusts was administrable in bankruptcy, places great stress upon Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104, as authority for the proposition that the court had summary jurisdiction over the bankrupt, the trust trustees and the First National Bank. That case, however, is beside the point for the reason that the order entered by Judge Barnes does not purport to make such an adjudication. It is true that the court in its findings of fact made in connection with this order found that the bankrupt on the date of his adjudication "was the owner of a vested equitable life estate" in the trusts and that said estate "became vested in the trustee in bankruptcy as of the date of adjudication herein." These findings we think must be regarded in the nature of a preamble to the findings which followed, all of which had to do with the main matter then before the court, that is, the rule to show cause directed at Thomas Hart Fisher and his response thereto. In the conclusions of law which the court made in connection with the findings just referred to, the bankrupt's interest in the trusts is not mentioned, but all of such conclusions have to do with the proceeding against Fisher. This is likewise true of the court's order which has to do solely with the proceeding against Fisher, and any interest which the bankrupt had in the trusts is not mentioned or referred to. It would seem that the mere recitation of this situation is sufficient to demonstrate that the findings with reference to the bankrupt's interest in the trusts was not a judicial determination of that question. Findings of fact carry no finality from which an appeal can be taken and, of course, are not res adjudicata of the facts so found.

Moreover, the position of the trustee before this court is directly opposed to that of his counsel both at the time this order was entered and at the hearing before Judge Shaw. On the former occasion, counsel for the trustee expressly assured the court and opposing counsel that there was nothing in the order which bound any person other than Fisher. In a brief filed before Judge Shaw, counsel for the trustee contended that Judge Barnes had summary jurisdiction only over Fisher. (Even this contention was rejected by this court in Fisher v. Young, et al., 7 Cir., 168 F.2d 803.) And it was specifically disclaimed that the court had any jurisdiction to adjudicate the interest of the bankrupt in the trust either over the bankrupt or the trustees. The brief, with reference to the findings of Judge Barnes, states: "To argue now that these findings expressly made under the circumstances above set forth constitute any sort of a binding adjudication so far as the trustees and the bankrupt are concerned would require a result which, it is respectfully submitted, a court of equity, being a court of conscience, cannot tolerate."

As already noted, when the matter came on for hearing before Judge Shaw which culminated in the order appealed from, the predominant issue was whether the court should approve the compromise offer made by the bankrupt. It thus becomes material to ascertain the basis which resulted in such disapproval and dismissal of the proceedings, which are to be found in the opinion filed by Judge Shaw in connection with his findings and conclusions of law. In his opinion Judge Shaw stated: "I find as a matter of law that it would be contrary to the public interest to approve the proposed compromise settlement. Summarizing the entire voluminous record, we have neither a bankrupt, nor a creditor entitled to be heard, nor an estate to administrate, and there can be no excuse for keeping this show on the road. All of the costs of, and since, the re-opening of this matter have been brought about in the name and on behalf of The Benevolent and Protective Order of Elks."

In what manner the public interest would have been affected by an approval of the compromise we are unable to discern. After all, it was proposed by the bankrupt for the purpose of terminating this protracted

litigation, and we think such an objective would have been favorable rather than contrary to the public interest. Neither do we agree with the idea that the court did not have before it a bankrupt. As already shown, the original adjudication was voluntary and the order of Judge Barnes reopening the proceedings was recognized by the bankrupt when he, after leave was obtained, filed his amended schedules in the proceedings. More than that, there were creditors scheduled other than the Elks, and there were assets other than the disputed item of the bankrupt's interest in the trusts.

■ The chief stumbling block which the lower court found in the way of approving the settlement, and in fact for dismissing the proceeding, was the court's view that the Elks was not a creditor of the bankruptcy estate. In this regard the court found that the bankrupt was a stockholder of 1142 shares of stock in the Chicago Bank of Commerce, which was closed by direction of the state auditor on June 24, 1932, and that several proceedings were subsequently instituted against Joslyn by depositors of said bank, on account of such stockholder's liability, which proceedings had been consolidated under the title of Armin F. Hillmer, et al. v. Chicago Bank of Commerce, and that said action is still pending. The court concluded as a matter of law that the Elks was not a creditor and "is not entitled under the law of Illinois to carry on proceedings against said George R. Joslyn as a stockholder of the defunct Chicago Bank of Commerce; that its remedy, if any, is through the class action now pending and undisposed of" in the above entitled state court action. In support of this view, the court cites Zimmerman v. Zeimer, 363 Ill. 220, 1 N.E.2d 854; Burket et al. v. Reliance Bank & Trust Co., 367 Ill. 196, 11 N.E.2d 6, and Decker et al. v. Domoney, 387 Ill. 524, 56 N.E.2d 750. It is true that these cases and others called to our attention hold that where a representative suit is pending in a state court to determine the liability of stockholders for the benefit of all creditors, an action at law is not maintainable by an individual creditor to enforce such liability. The rule thus announced, however, has no application to the situation here presented. The question is not whether the Elks can maintain an action at law in the state court to recover on Joslyn's stock liability but whether it has a provable claim in bankruptcy.

That it has such a claim is hardly to be doubted, both under the Federal and Illinois decisions. In Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827, the stockholder became a voluntary bankrupt and was discharged. Subsequently, in an action brought by a creditor, the bankrupt pleaded in bar a discharge in bankruptcy. The court held that the stockholder's liability, even if it were unliquidated, was a provable debt in bankruptcy and was therefore discharged by the bankruptcy proceedings. In so holding the court stated, 300 U. S. at page 604, 57 S.Ct. at page 547, 81 L.Ed. 827: "In saying this we are not unmindful that a comprehensive suit in equity is commonly the proper remedy against shareholders where insolvency becomes manifest in voluntary liquidation. 12 U.S. C. § 65, 12 U.S.C.A. § 65. The remedy does not exclude the presentation of a proof of claim in bankruptcy, the amount to be liquidated under the direction of the court by bill in equity or otherwise."

This court in Reaugh v. Hadley, 7 Cir., 93 F.2d 29, 30, cited and followed Brown v. O'Keefe, supra, and specifically held that a claim against a stockholder in a closed national bank is "provable in bankruptcy even before fixed in amount."

True, as pointed out, the stockholder's liability in the cases just cited involved national banks where the liability arose from a statutory enactment, while in Illinois the liability is created by the constitution. We think, however, that this factual distinction is immaterial to the question of the provability of a claim against the estate of a bankrupt stockholder. In fact, the Supreme Court of Illinois in Kape v. Home Bank & Trust Co., 370 Ill. 170, 18 N.E.2d 170, relied upon the rule of Brown v. O'Keefe, supra, and applied it to a similar situation arising out of a stockholder's liability in an Illinois state bank. There, a judgment had been obtained in the state court against the stockholder who

filed his voluntary bankruptcy petition and was thereafter discharged. The court held that the discharge was a bar to the enforcement of the judgment, and in doing so stated 370 Ill. at page 171, 18 N.E.2d at page 171: "We know of no policy which prevents a judgment for bank stockholder's liability from being provable and dischargeable in bankruptcy."

The court further stated, referring to Brown v. O'Keefe, supra (370 Ill. at page 172, 18 N.E.2d at page 171): "There is no difference in principle between that case and the one at bar. It is immaterial that in one the liability is imposed by statute, and in the other by the constitution."

The record in the instant case discloses that the bankrupt in the stockholder's liability suit pending in the state court has pleaded his discharge in bankruptcy as a bar thereto. If Judge Shaw's views be given effect, it would seem that the bankrupt's discharge theretofore allowed would be good and, under the authorities cited, there can be little doubt but that it can be utilized as an effective bar to the suit against him in the state court. Thus, the incongruous situation is produced by which the Elks is not permitted to pursue its claim in bankruptcy for the reason that it does not have a provable claim, and at the same time it and other creditors would be barred in the state court on account of the bankrupt's discharge. It is our view that the Elks has a provable claim in the bankruptcy proceeding, and we so hold.

. This brings us to another question much discussed which we think is unnecessary to consider or decide, and that is the issue of the administrability of the bankrupt's interest in the trusts. In fact, we are doubtful if that issue is properly before this court. As already shown, the trustee filed petitions for a turn-over order against the bankrupt, the First National Bank and the trustees under the Joslyn trusts. All of such respondents by answer challenged the summary jurisdiction of the court over the bankrupt's interest in such trusts, as well as the income accumulated therefrom. Also as noted, a petition for turn-over order was filed by the trustee on January 13, 1947, against Mrs. Joslyn and Fisher. It

was the issues raised by these petitions, and especially the one directed at Fisher, which culminated in Judge Barnes' order of January 24, 1947. Judge Barnes held that the court had summary jurisditcion over Fisher. This ruling was reversed by this court, 168 F.2d 803. If the court at that time had no summary jurisdiction over Fisher, as we held, there is even less reason to think that it had such jurisdiction over the other parties who were before the court, and particularly the First National Bank and the Joslyn trustees.

We are unable to discern how the court which entered the order appealed from had any greater or different jurisdiction in this respect than the court had at the time of Judge Barnes' order of January 24, 1947. So far as the record discloses, the only matter before Judge Shaw relevant to the instant question was the same petitions by the trustee for a turn-over order with the same challenge to the court's summary jurisdiction. Also in this connection, it is pertinent to note that the bankrupt in his amended schedules filed subsequent to the order of re-opening, while listing in the schedules his trust interests, pointed out that it was merely for the purpose of informing the court and challenged the claim that such interest was administrable in bankruptcy or that the court had any jurisdiction thereover. We recognize that the bankrupt, the First National Bank and the Joslyn trustees could have consented to the court's jurisdiction when appearing before Judge Shaw, but we find nothing in the record to indicate that such was the case. Naturally, these parties having obtained a favorable opinion at the hands of Judge Shaw, now attempt before this court to sustain it.

We have some difficulty in determining just what Judge Shaw did decide in this respect. It is true in his opinion he expressed the view that the interest of the bankrupt in the trusts is not administrable in a court of bankruptcy, but at the same time he stated, "There has never been a time in these proceedings when any judge of this court had jurisdiction to decide that question, even if so disposed." Again, in his conclusions of law, it is stated that the

interest of Joslyn in the trust estate "may not be reached by creditors nor a bankruptcy trustee acting in their behalf and that this question of law is free from doubt." At the same time the court concluded as a matter of law that it had no jurisdiction over the trust trustees or the trust estate held by them or the First National Bank of Chicago. The court specifically concluded: "That the question of title to said trust funds and the proceeds therefrom and the adverse claims of the said Trustees thereto is a matter which would have to be adjudicated in a plenary action and not summarily in this Court."

 More than that and of more importance perhaps is the fact that in the decree appealed from there is no adjudication relative to the interest of the bankrupt in the trust estate; in fact, such interest is not mentioned. Certainly the expression by Judge Shaw in his opinion and even a statement in his conclusions of law that the bankrupt had no interest in such trusts administrable in bankruptcy is not final and binding upon the parties. Such expression and conclusion by Judge Shaw does not constitute an adjudication of the question any more than the contrary findings by Judge Barnes in his order of January 24, 1947, heretofore discussed.

We agree with the view of Judge Shaw that "There has never been a time in these proceedings when any judge of this court had jurisdiction to decide that question, even if so disposed," and that it "is a matter which would have to be adjudicated in a plenary action and not summarily in this Court." Under such a situation, we do not see how the question was properly before him for decision and, if not, it is not properly before us on review. Much as we regret to aid in the further prolongation of this proceeding, we are of the view that it was improperly dismissed. We refrain from expressing any opinion upon the merits of the question as to whether the bankrupt's interest in the trust estate is administrable in bankruptcy. It will be time enough to decide that question when it is properly before us. We do hold that the question is one which can only be properly adjudicated in a plenary action instituted by the trustee. And whether such an action should be commenced is determinable in the court below and not here.

As to the costs taxed to the Elks, we recognize that the court has a wide discretion in this respect. At the same time, it is evident that the costs were taxed against the Elks upon what we hold to be the fallacious premise that it had no provable claim against the bankruptcy estate. Inasmuch, however, as the decree appealed from is to be reversed, including that part which taxes the costs to the Elks, we see no occasion to discuss the matter further. The order of Judge Barnes taxing the costs to the bankrupt has not been vacated, and it stands as the order of the court relative thereto.

The decree appealed from is reversed and remanded, with directions that it be vacated and that the proceedings continue in the usual course.