118 So.2d 596 (1960)
Manuel M. GISPERT, III, Vincent Labarbera and Raymon Benitez, Appellants,
v.
STATE of Florida, Appellee.
No. 1206.
District Court of Appeal of Florida. Second District.
February 19, 1960.
Rehearing Denied March 16, 1960.
*597 Mark R. Hawes, Fred C. Barksdale, and John B. Minardi, Tampa, for appellants.
Richard W. Ervin, Atty. Gen., and Leonard R. Mellon, Asst. Atty. Gen., for appellee.
MORROW, R.O., Associate Judge.
The three appellants in this case were each convicted of breaking and entering and of grand larceny, and were sentenced to a term of years in the State Prison. The trial court denied the appellants' motion to suppress evidence on grounds that it had been obtained through an unlawful search and seizure. The questions presented here are, One: Was there sufficient probable cause to justify a search of an automobile belonging to one of the appellants without a warrant? And, Two: Can the other two appellants raise the question of unlawful search and seizure?
The salient facts are as follows: About 2:40 o'clock a.m., two deputy sheriffs of Hillsborough County were patrolling a certain area of the county, and at or near the intersection of Highway 301 and Balm Road, they observed a car in which were three men approaching and passing them from the opposite direction. There was a heavy drizzle and the road was wet, and the deputies noticed that the automobile turned north on Highway 301, and was proceeding at a high rate of speed. The driving deputy turned his car around and pursued the other vehicle. During the course of the pursuit, they clocked the other vehicle as traveling between 65 and 70 miles per hour. The deputies pulled alongside and signaled the other car to stop. Immediately on stopping, the appellants got out of their car and came back to the deputies' car, which had stopped to the rear of the other car. The officers identified themselves as deputies, and informed the appellants that they had been stopped for speeding. While one deputy was checking a driver's license, the other deputy walked to the appellants' car and shined his flashlight through the window of the car and saw several boxes on the back seat and some metal boxes and envelopes on the floor. The deputy then opened the car door and saw a metal box with what appeared to be fire clay and money in it. This deputy then called to the other, saying that these men were "safe men" and to watch them. At this time two of the appellants attempted to leave, but were halted by the deputy. At this point the appellants were placed under arrest. After the appellants were placed under arrest, further search was made and papers were found which indicated they had come from the V.M. Ybor School. A search of the trunk compartment revealed a sledge hammer, crow bar, and tire iron. A search of the glove compartment produced a loaded .32 caliber pistol. Subsequent to the arrest it was determined that there had been a breaking and entering at the School above referred to during the previous night, and that the contents on the back seat and floor of appellants' automobile were from said School. The car belonged to the appellant Gispert, and was being driven by the appellant Benitez. The appellants did *598 not consent to the search, and some of the incriminating evidence was found prior to the time the appellants were placed under arrest.
Since it is undisputed that Gispert was the owner of the car, the first question to dispose of is whether the other two appellants come within the purview of the law on unlawful search and seizure. Under the facts and circumstances of this case, we think they do not. In the case of Alexander v. State, Fla.App. 1958, 107 So.2d 261, 263, this Court stated:
"Immunity to an unreasonable search and seizure is a personal privilege to the one whose right has been invaded, and he only is entitled to invoke the constitutional guaranty against unlawful search and seizure. Generally, an accused cannot protest a wrongful search and seizure of premises or property which he does not own or lease or lawfully occupy or possess or in which he has no interest. See Mixon v. State, Fla. 1951, 54 So.2d 190; * * *"
In the use of the term "lawfully occupy" it has been held as not including those who are merely invitees or whose presence is only "lawful" because they are not trespassers. Lambert v. State, 196 Md. 57, 75 A.2d 327. The fact that the appellants were on a joint nefarious venture, and that one non-owner was driving the car, does not give the two non-owners such occupancy or possession of the automobile or interest therein or the property seized as would place them in a position to claim wrongful search and seizure.
The remaining question is whether or not there was sufficient probable cause to justify a search of the appellant owner's automobile without a warrant.
In dealing with probable cause, we find a concise statement in the case of Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890, wherein it is stated:
"In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
"`The substance of all the definitions' of probable cause `is a reasonable ground for belief of guilt.' * *"
In the case of Pearson v. United States, 10 Cir., 1945, 150 F.2d 219, 220, we find the following:
"* * * probable cause justifying a search without a warrant exists where the facts or reasonable inferences deductible therefrom should lead a reasonably prudent and intelligent person to conclude that there is good ground to believe that the law is being violated."
In order to determine whether there is probable cause to make a search without a warrant, we must first determine the sufficiency of the knowledge of the deputy sheriff by a comparison as to what a reasonable man, knowing all the facts which the deputy knew, would have believed under all of the circumstances. Certainly the arresting officers had lawful reason to stop the vehicle in question, in that it was traveling between 65 and 70 miles an hour in a 55 mile an hour zone, at approximately 2:40 o'clock a.m. during a rain. Upon being stopped, the three occupants of the car immediately got out and came back to the officers' car in the rain before one officer had an opportunity to open the door. As one deputy testified, his suspicions were aroused by this action on the part of such occupants. At this point one of the deputies walked to the car and shined his flashlight in the window. The following is his testimony at two different times during trial:

*599 "* * * And I walked up to their automobile and shined my flashlight in and noticed several boxes in the back seat. Some metal boxes on the floor-board. And several envelopes scattered about the floorboard. At this time I became more suspicious, thinking that maybe these subjects had committed a B & E in that section.
"* * * I walked up to their automobile on the right-hand side and looked into it with my flashlight. On the rear floor I could see a lot of cards, letters and money in boxes down there, and a cash box, and envelopes scattered about the floor. Some other cardboard boxes in the back seat."
We conclude that a reasonable, prudent and intelligent person would, under the above circumstances, have good ground to believe that a felony had been or was being committed. The fact that the deputy flashed his light through the window is no different than if the same observations could have been made in daylight without a flashlight. In the case of Joyner v. State, 157 Fla. 874, 27 So.2d 349, the Supreme Court of Florida upheld a conviction upon a set of facts similar to this case, with reference to the use of a flashlight and the subsequent search. The facts in the Joyner case were as follows:
"The record discloses that at an early hour of the morning two policemen of the City of Jacksonville observed a car parked, and apparently without an occupant. Shortly thereafter they noticed someone in the car attempting to start it. It had been raining and evidently the motor had drowned out. One of the policemen threw his flashlight on the car and when he did so a man ran from it. He chased the man but did not catch him, whereupon he returned to the car and the other policeman. In the meantime the other policeman approached the car, flashed his light on it and observed a quantity of loose coins, sacks, etc. Thereupon the two remaining occupants were arrested and the car was searched which revealed a pistol, ammunition, a safe tumbler, a large quantity of currency consisting of rolled change, silver, bills and checks."
We conclude that the trial judge was eminently correct in denying the motion to suppress the evidence in question in the instant case.
Affirmed.
ALLEN, C.J., and SHANNON, J., concur.