PIERCE, Chief Judge.
On January 29, 1971, appellant Nerry Johnson, after trial and conviction before a jury, was adjudicated guilty and sentenced to a term of imprisonment, from which judgment and sentence he now appeals to this Court.
Appellant Johnson was charged by information filed in the Pinellas County Circuit Court with carrying “about his person a concealed firearm, to-wit: a gun”. Upon trial he was found guilty, and upon being adjudged guilty was sentenced to serve five years in the State Prison. The sole point urged here for reversal is that the trial Court erred in denying defendant’s motion to suppress the evidence obtained as result of an alleged illegal search and seizure. We agree with such contention and reverse.
St. Petersburg police officer Kautsky testified that on the afternoon of December 26, 1969, he “observed a colored male assisting a colored female who appeared to be quite inebriated at the time going in the southerly direction from that area * * that “at this time we assisted this man in taking this woman on down the street just a short distance to where he said they were staying at an apartment * * * ”; that “we had to almost carry the colored female down to the back side, the west side, of this apartment * * * I felt at this time it would be better to get her on off the street and get her home rather than run the risk of having to transport her down to the Station to jail, because she was almost passed out to the point she couldn’t control herself there. I felt it would be a little better thing to do to get her off the street than carrying her and putting her in jail”.
The officer further stated that he was assisted in carrying her by “three colored males with Nerry Johnson being one. He and I were on the down side going up the stairway * * * It is a moveable fire escape stairway, about four feet in width, narrow in the steps,' a little bit awkward carrying anybody up”; that it was “an apartment building complex, upstairs to a two-story wooden apartment building”; that “as we were going up the stairway, why the defendant, Nerry Johnson, was on my lefthand side and both of us were on the down side of this woman where we could help her up the stairs, and got going up these stairs. I accidentally hit his right front pocket and I felt what appeared to me to be a small caliber weapon.” Asked to describe what he felt, he said “I felt a hard metal object that was shaped similarly to a small caliber automatic”.
The officer further testified that while they were still on the stairway “I reached back around with my left hand and I did get hold of the defendant’s right front pocket and * * * I felt it was a small caliber automatic pistol”, that until they got the woman up to her upstairs bedroom he did not observe any weapon “because it was on the inside part of his right front pocket”; that “at this time we continued on up the stairway and I was quite cautious to make sure I kept both Nerry Johnson’s hands in my view at this time. We went on up the stairway and in a narrow hallway, and on down the hallway to a room. I believe it was room number 15. At this time, we placed the female on the bed and I reached over and got hold of Nerry’s pocket and advised him he was un *734 der arrest for carrying a concealed weapon. I asked him to step out into the hall which he did. At this time I removed the weapon from his pocket and a clip from another pocket and handcuffed him and took him on down to the cruiser, and at this time I advised him of his rights and what he was being charged with and took him on down to the Station and booked him * * * for carrying a concealed firearm”. The small automatic pistol and a separate “clip and cartridges” were later offered and received in evidence. Timely objections were made to admission of the foregoing evidence.
The officer stated that during all this time Johnson had his coat on, that both his hands were assisting helping his wife, to get up and walk on the street and to stand up and walk up the stairway into her room upstairs in the house. Johnson was not asked by the officer where he got the gun or anything else about it.
Nerry Johnson testified in his own behalf that he had had the gun only about an hour before the officer arrested him, that it had been loaned to him by a friend, one Bob Hamp, near his home after he had heard a shot fired in the neighborhood; that he and a friend of his “had tried to take the bullets out of the gun * * * and we couldn’t get the bullet out because it was jammed up, and I just put the gun in my pocket and assisted my wife home, and I saw the officer, and he came up in the back, and I said, I wonder who he is looking for, and so me and my friends took my old lady upstairs and as soon as I put her in the bed that is when he hit my pocket and said you are under arrest, and he handcuffed me there in my room”.
Asked to further elaborate upon what happened, he said, “I had holt of her when the officer passed me and he asked me could he help me, and I said no, I could manage. And a friend of mine came up to escort her to the house, and the stairs are three feet wide, so it was kind of impossible for the three of us to go up the steps, and I had to kind of lean to hold on to her, and after I got her up the stairs, I told the officer to hold on to her till I unlocked the door, and he did, and I lay her on the bed, and when I lay her on the bed he hit my pocket, and it was the same suit as this, and when he hit my pocket he said you are under arrest.”
There was no further testimony.
After an adverse verdict Johnson was adjudged guilty and sentenced as aforesaid. It is from this judgment of conviction that Johnson appeals here. He contends that under the facts adduced the arrest and seizure of the weapon in his pocket in his home was constitutionally unjustifiable and, that being the primary evidence against him, the trial Court was in error in not directing a verdict in his favor as a matter of law. We agree and reverse.
There is no question here of a search of the person as an incident to a lawful arrest, because there had been no arrest. The whole question is whether or not there was probable cause, from a legal standpoint, to make the search and seizure at the time it was made. Numerous cases by the appellate Courts of Florida have defined probable cause under varying circumstances, among which are three fairly recent cases from this 2nd District Court, Gossett v. State, Fla.App.1966, 188 So.2d 836; Gispert v. State, Fla.App.1960, 118 So.2d 596; and Paula v. State, Fla.App.1966, 188 So.2d 388.
In Paula we said:
“In dealing with ‘probable cause’ for search and seizure without a warrant, a court deals with probabilities which are not technical but which are factual and practical considerations of every day life - upon which reasonable and prudent men act and not legal technicians. The essence of ‘probable cause’ is a reasonable ground for belief of guilt; and the court in determining whether there was probable cause to make a search without a warrant must first determine sufficiency of knowledge by the searching officer by comparison to what a reasonable man, *735 knowing all the facts which the searching officer knew, would have believed under all of the circumstances. Gispert v. State, Fla.App.1960, 118 So.2d 596, cert. denied, Fla.1960, 122 So.2d 782.”
We hold that, upon authority of the foregoing cases, there was not sufficient probable cause to justify the search and the consequent arrest and seizure of the gun. Nerry Johnson was in his own home; it was in the nighttime; he had committed no affirmative act involving a violation of the law; he was sober; he had not threatened anyone and in fact at the time of the search and arrest he was cooperating with the officer and vice versa in getting his wife to her living room where she could “sleep it off”.
The sworn testimony of Johnson, which incidentally was not contradicted, was evidence showing no probable cause to exist for the search and seizure. And even the testimony of the officer did not measure up to the degree of proof necessary to justify an otherwise unconstitutional search and seizure.
It would be of no avail here to discuss or attempt to analyze the various facets of the testimony leading up to the seizure of the articles. Suffice to say that we have carefully reviewed the same and in our opinion, under the authorities hereinbefore cited, the facts do not lend constitutional vitality to the search and seizure.
Defendant Johnson was an indigent. He was unable to employ private counsel. He was represented at the trial and in this Court by an assistant Public Defender, albeit an able one. After conviction he could not furnish appeal bond to stay proceedings on the conviction commitment. He has therefore been incarcerated in the State Prison during this appeal. He was unable to pay the incidental costs of having his appointed counsel argue his appeal orally before this Court. But all of that does not in the slightest lessen our zeal to protect his constitutional rights.
The judgment of conviction appealed from is thereupon-—
Reversed, with directions that appellant Nerry Johnson be released from custody and the charges against him dismissed.
So ordered.
HOBSON, J., concurs.
MANN, J., dissents with opinion.